James BETZ et al.

v.

Joseph R. PAOLINO, Jr., et al.

Robert McELROY et al.

v.

Joseph R. PAOLINO, Jr. et al.

Nos. 90–467–A, 91–355–A.

Supreme Court of Rhode Island.

April 8, 1992.

John P. Hawkins, Hawkins & Hoopis, Providence, for plaintiffs.

Richard G. Riendeau, Edward C. Clifton, Providence, for defendant.

Richard A. Skolnik, Providence, for intervenor.

## OPINION

WEISBERGER, Justice.

These cases come before us on the appeal of the mayor, the controller, and the treasurer of the city of Providence from a declaratory judgment entered in the Superior Court together with a mandatory injunction ordering them to implement certain benefits that were added to the retirement statute of the city of Providence by the retirement board upon the application of certain retired firefighters and police officers. A number of the retired firefighters and police officers sought additional longevity benefits that were arguably not awarded to them by a collective-bargaining agreement executed after their retirement. Two retired firefighters sought benefits as a result of having developed cancer after their retirement. Upon the application of these retired firefighters and police officers, the Retirement Board of the City of

Providence (retirement board) by majority vote essentially amended the "Retirement Act" so-called, to include these benefits. However, the mayor, the controller, and the treasurer declined to carry into execution the additional benefits approved by the retirement board on the grounds that the act had not provided for such benefits and that the retirement board had no power to legislate additional benefits. These actions for declaratory judgment and injunctive relief ensued. The retirement board intervened as a party plaintiff. We reverse.

■ In the course of this opinion we shall refer to the Retirement Act, a special statute enacted by the Legislature as P.L. 1923, ch. 489. This statute was entitled "The Providence Retirement Act" and established a comprehensive system of contributions, benefits, and regulations relating to pensions to be paid to firefighters, police officers, and civilian employees of the city. The statute was amended numerous times since its enactment. Class A employees generally consisted of civilian employees, and class B employees generally included members of the police and fire departments, now grouped under the heading the Department of Public Safety. Although we shall continue to refer to this body of law as the Retirement Act, it has really become part of the local ordinances of the city of Providence by reason of the adoption of a home-rule charter in 1980, which became effective subsequent to ratification by the General Assembly and by a referendum vote of the citizens of Providence on January 3, 1983. At the time of this litigation the Providence City Council had not reenacted this statute as an ordinance. However, § 908 of the charter of the city of Providence did provide for the election and term of an employee retirement board consisting of eleven members, including the mayor, the chairperson of the city council committee on budgetary matters, the city controller, and two members to be elected by the city council who "shall not be officers or employees of the city * * * [but] representatives of the present and retired employees of the city," § 908(a)(1). The employee representatives must be chosen from the class A and class B employee

groups. Two class A employees must be elected by members of the system who are class A employees, and one class B employee must be elected by members of the system who are class B employees of the fire department and one class B employee must be elected by employees of the police department. In addition one retired class A employee must be elected by the retired class A employees and one retired class B employee must be elected by retired class B employees. Those members who are elected serve for four-year terms. The powers and duties of the retirement board are set forth in § 908(b)(1) and (2):

"The powers and duties of the retirement board shall be without limitation the following:

(1) To establish rules and regulations for and be responsible for the administration and operation of the city employee retirement systems under its jurisdiction:

(2) To report annually in detail to the city council on or before the first Monday in January, showing the fiscal transactions of the system for the fiscal period of the city next preceding, the amount of the accumulated cash and securities of the system and a copy of the last balance sheet showing the financial condition of the system by means of an annual actuarial valuation of the assets and liabilities."

Prior to the adoption of the home-rule charter, P.L.1923, ch. 489, § 3 made provision for a retirement board whose powers were set forth in the statute and included the administration of the retirement system, the investment of funds, and the determination of eligibility of applicants, but generally the board's powers in implementing the provisions of the Retirement Act were administrative and ministerial in that the board had no power to depart from the requirements or provisions of the statute. *Kritz v. Cianci*, 474 A.2d 1248 (R.I.1984).

The plaintiffs now claim that by virtue of § 908 of the charter of the city of Providence, the powers of the board have been expanded to include the authority to amend that which is now a local statute to provide for new or additional benefits and presum-

ably the concomitant authority to reduce benefits if, in the exercise of its sound legislative discretion, the board should deem such amendments necessary or desirable. With this argument we must respectfully disagree.

The trial justice in his decision held that § 908(b)(1) granted the board plenary authority to oversee and operate the retirement system. He observed: "Nothing in the city charter gives that authority over the city employees retirement system to any other public official or public body. Consequently, the clear language in § 908(b)(1) of the city charter must be given its plain and intended meaning and effect." He then cites *Bruckshaw v. Paolino*, 557 A.2d 1221, 1224 (R.I.1989), for the proposition that "the Providence home rule charter vests authority in the Employees Retirement Board of Providence to regulate city employee pensions."

The trial justice's quotation from *Bruckshaw* is accurate. However, the sole question presented in that case was the validity of a purported amendment to the Retirement Act of the City of Providence by P.L.1985, ch. 468, to provide for a purchase of back credits by any class A or B employee employed by the city of Providence on September 1, 1985, who had previously served as an employee of any state agency or municipal government. The retirement board refused to implement this statute and was upheld by reason of the alteration of the relationship between the Legislature and the city of Providence after its adoption of a home-rule charter. We held that by reason of article XIII, section 4, of the Rhode Island Constitution the General Assembly could only legislate regarding matters of local concern through a statute that would apply alike to all cities and towns, or, if applicable only to one home-rule municipality, such legislation would be effective only if approved by a referendum of the qualified electors. It is true that we stated in *Bruckshaw* that "the Providence home rule charter vests authority in the Employees Retirement Board of Providence to regulate city employee pensions," but we were not called upon to decide the question concerning whether the retirement board had a power to legislate. 557 A.2d at 1224.

No question exists concerning the powers of the board to administer, to operate, to invest funds, and to exercise the quasi-judicial function of determining eligibility. However, the home-rule charter of the city of Providence is not silent concerning the power of legislation. Article IV, section 401, of the charter entitled "Legislative Powers" reads as follows:

"The legislative powers of the city shall be vested in a city council, which shall have and exercise all powers vested in it by this Charter and by the laws of the state. The powers and duties of the city council shall include, *without limitation*, the following:

(a) To enact such ordinances as the city council may consider necessary to insure the welfare and good order of the city * * *." (Emphasis added.)

■ It should be noted that the words "without limitation" appear in § 401 as well as in § 908. In construing a statute or charter, this court must discharge the responsibility to ascertain the intent of the framers by considering the enactment in its entirety. *See, e.g., Brennan v. Kirby*, 529 A.2d 633, 637 (R.I.1987); *Berkshire Cablevision of Rhode Island, Inc. v. Burke*, 488 A.2d 676, 679 (R.I.1985). It seems quite clear that the citizens of the city of Providence specifically conferred the entire legislative power on the elected city council. This was in accordance with article XXVIII, section 3, of the amendments to the Rhode Island Constitution then applicable, which required that the legislative power of a municipality that is to be governed by a home-rule charter must be exercised by a "legislative body composed of one or two branches elected by vote of its qualified electors." (This requirement is now contained in article XIII, section 3, of the Constitution promulgated in 1986.)

As already noted in this opinion, the members of the retirement board are not elected by the voters of the city but include ex-officio members (of whom only the mayor is elected by popular vote) and a number

of other members who are elected either by the city council or by active or retired employees. There is no question that the power to legislate retirement benefits is as important a legislative function as any other element of that power to be exercised by the governing body of the city. The legislation of benefits has a direct effect upon the budgetary affairs of the city and may very well require additional appropriations to be made by the city council. Even plaintiffs do not contend that the retirement board has the power to appropriate money.

We are of the opinion that the delegation of the legislative power is clear and unambiguous. The fact that the General Assembly may no longer legislate concerning the retirement benefits of the city employees of Providence (without a referendum) would logically place the power of legislation on this subject in that body which is the general repository of all legislative powers of the city, namely, the city council, which is elected by the qualified voters of Providence.

Consequently we conclude that notwithstanding the language of *Bruckshaw*, which recognizes the significant administrative powers of the retirement board, those powers do not include the power to legislate. However prudent, dedicated, and diligent the members of the retirement board may be, and we have every respect for the expertise of this body, we cannot by implication clothe them with the legislative power denied to them not only by the home-rule charter but also by the Constitution of this state.

■ The plaintiffs Robert McElroy and Walter Atigian also contend that the State

Legislature, in enacting G.L.1956 (1991 Reenactment) § 45–19.1–3, intended to provide for all firefighters benefits for occupational cancer whether it occurred or manifested itself during active service or retirement. This general statute was enacted in 1986. In a series of cases we have held that general statutes purporting to benefit firefighters or police did not supersede the special statute that had been enacted by the Legislature in respect to the city of Providence. *Local 799, International Association of Firefighters AFL–CIO v. Napolitano*, 516 A.2d 1347 (R.I.1986); *Police and Firefighter's Retirement Association of Providence v. Norberg*, 476 A.2d 1034 (R.I.1984); *Santanelli v. City of Providence*, 105 R.I. 208, 250 A.2d 849 (1969); *Landers v. Reynolds*, 92 R.I. 403, 169 A.2d 367 (1961). There is no indication that the General Assembly manifested a different specific intent in enacting § 45–19.1–3. In this case, as in the prior cases, we must apply the general rule of construction that a special act should prevail over a statute of general application. Consequently the plaintiffs may not succeed on this issue.

For the reasons stated, the defendants' appeal is sustained and the judgment of the Superior Court is reversed. The papers in the case may be remanded to the Superior Court with directions to enter judgment in favor of the defendants.