DECISION
The Providence Teachers Union, Local 958, American Federation of Teachers (hereinafter "the Union") has petitioned the Court, pursuant to G.L. 1956 (1986 Reenactment) § 28-9-17, to enter an order confirming the award of an arbitration panel made on December 16, 1994. In that award the panel found by a split decision over the dissent of the "Board Member" that the Providence School Board (hereinafter "the Board") violated the parity clause of the collective bargaining agreement with the Union, and was directed to make the grievants whole by applying the parity formula in the manner advanced by the Union. The petition was filed on December 22, 1994 and notice was given on that date to counsel for the Board. Hearing was scheduled for January 17, 1995.
On January 11, 1995 the City of Providence (hereinafter "the City") moved for leave to intervene. Hearing on the City's motion was scheduled for January 17, 1995. The City also filed both an objection to the Union's motion to confirm the award as well as a motion to vacate the award pursuant to § 28-9-18, relying principally on the ground that the holding of the Supreme Court in Providence City Council v. Cianci, 650 A.2d 499 (R.I. 1994) was dispositive of the issues in this case.
On January 12, 1995 the Board filed its own objection and motion to vacate the award on substantially the same grounds as asserted by the City. On the same day the Union objected to the City's motion for leave to intervene.
On February 6, 1995 the City's motion for leave to intervene was granted, and a briefing schedule was established. Briefing was concluded on March 24, 1995 when the Union filed its reply memorandum.
I.
On January 11, 1993 a document captioned "AGREEMENT" was executed by the chair and seven members of the Board, on one hand, and the acting president and three other representatives of the Union, on the other. Each page is initialed and dated by the chair of the Board and the acting president of the Union. The controversial parity clause begins at the foot of an unnumbered first page and extends through the head of the page numbered 2. At the foot of the fourth page all the other terms and conditions of a prior one-year contract were adopted as the three-year contract which the document purports to memorialize in writing.
Although the "AGREEMENT", itself, contains no arbitration provision, the previous one-year contract apparently did, because the published form of the "1992-1995 Agreement between the Providence Teachers Union AFT Local 958 and the Providence School Board" contains an arbitration provision as Level 5 of a contractual grievance procedure. As is so often the case the parties here were negotiating changes in 1992 to an existing prior form of agreement and were not re-negotiating an entire new contract.
Based on the memoranda submitted by the parties to the arbitration panel and the majority decision and the dissenting opinion of the panel, the only issue presented for decision by the arbitrators was the meaning of the parity clause and how it ought to be applied to the second and third year salary schedules in the "AGREEMENT." The Board never presented any evidence to the arbitrators that the City Counsel had failed to ratify the "AGREEMENT," nor did it present any argument to the panel that such ratification was legally required to validate the agreement. Of course, the Board presented no evidence that it was not authorized to represent the interest of the City at the arbitration proceedings, nor did it present any argument that the City should be joined as a necessary or indispensable party in the proceedings. The Board permitted the matter to be heard in arbitration as if it were the same as any other school committee in the State.
The City, and the Board, argue in this proceeding that the January 11, 1993 writing is not valid unless it has been ratified by the City Council of the City of Providence. They point to §17-27 of the Providence Code of Ordinances as a requirement that the January 11, 1993 agreement must be ratified by the City Council before it could become effective. Section 17-27, they say, has been upheld by the Supreme Court in Providence CityCouncil, supra.
The Union counters with the argument that § 17-27 applies only to those collective bargaining agreements to which the City, itself, is a party and not to agreements to which the Board is a party. Providence City Council, they say, is, therefore, not in point, since it did not involve a collective bargaining agreement to which a school committee, or an equivalent body like the Board, was a party. Furthermore, they urge that Exeter-WestGreenwich Regional School District v. Exeter-West GreenwichTeachers' Association, 489 A.2d 1010 (R.I. 1985) is more pertinent authority for the law regarding the relationship between municipal governments and school committees regarding collective bargaining agreements with certified teachers.
Unmoved, the City and the Board respond that the government of the City is unique. They say that the Board is not like the school committees of the other cities and towns and regional districts. Those committees are elected and derive their governmental powers under State law directly and independently from the electors of the respective cities and towns and districts. Those committees, according to this argument, have an independent status, a judicial personality, which allows them to contract and to appear as parties before the Court, separate from the districts they serve. See, for example, SchoolCommittee of the Town of Johnston v. Johnston Federation ofTeachers, 652 A.2d 976 (R.I. 1995); Pawtucket School Committeev. Pawtucket Teachers Alliance, Local No. 930, AmericanFederation of Teachers, 652 A.2d 970 (R.I. 1995).
The City says the Board is not such an independent governmental agency with power to bind the fiscal authority of the local government it serves like those referred to inExeter-West Greenwich Regional School District. According to its argument, the Board is uniquely a branch of the City government, subject to legislative control by the City Council, like the departments in which the employees referred to inProvidence City Council worked. The Board is therefore analogous to the Mayor of the City as a negotiating entity. They rest their argument on a history of special legislation and particular provisions in the City Charter regarding the Board and its predecessors.
In 1968 the electors of the City approved P.L. 1968, ch.203. By that Act significant changes were made in the fiscal management of the public school system in the City. A nine-member appointed school committee was established, as distinguished from the elected school committees referred to in § 16-2-5, which expressly did not apply to the City. In any event, local variations in the manner of selection and composition of school committees are clearly permitted by § 16-2-26 and the Home Rule provision of the State Constitution.
Section 10 of Chapter 203 reads in part as follows:
 "The city council shall have the power and authority to act on the school budget in the same manner and to the same extent it may act on the budgets of other city departments, and the city council may appropriate funds to the school department in lump sum or in such detail as it deems necessary and appropriate. The total amount or amounts so appropriated to the school department shall include all revenues from whatever source derived, and the department of finance in said city of Providence shall be charged with the responsibility of insuring that no expenditures are made or obligations created by the school committee which are in excess of the amount or amounts so appropriated or of such amounts as they may be amended by the city council."
This language is repeated verbatim in Section 707 of the Providence Home Rule Charter. The budget and appropriation process described in § 10 is not much different from that of other municipalities in the State, as is clearly implied by the provisions of § 16-2-21. In addition § 11 provides that within the amounts appropriated the school committee had authority for the expenditure of all school funds in accordance with law and the provisions of the act.
The Union points to Section 706 of the Charter, which provides in pertinent part:
 "The powers and duties of the school board shall be all those imposed on school boards by state law, and, without limitation the following:
 * * *
 (e) To appoint and remove all school department employees and fix their salaries within limits established by appropriation of the city council for the school department."
The Union emphasizes the power of the Board to fix salaries; the City emphasizes the limitation of that authority to the amounts appropriated by the City Council.
The fundamental question on this point is whether or not the Board has independent contracting power like the regional school committee in Exeter-West Greenwich Regional School District or whether its power to contract is subject to the City Council's power of ratification like the Mayor in Providence CityCouncil.
The Board's power to negotiate, bargain and enter into collective bargaining agreements is established by § 28-9.3-4.
The Mayor's power to negotiate, bargain and enter into collective bargaining agreements is derived from authority reposed in that office by the Providence Home Rule Charter. Section 28-9.4-5
simply establishes the power and responsibility to bargain collectively in "the municipal employer," obviously leaving room for a self-governing municipality to specify how such agreements may be entered into by the municipality. There does not appear to be the same room in § 28-9.3-4. The "school committee," referred to in the section, seems to be vested with independent bargaining power and Exeter-West Greenwich Regional SchoolDistrict appears to make those bargains binding on municipal appropriating agencies.
Nevertheless, the Supreme Court, in Providence City Council
separated out the ratification process from the negotiating process in collective bargaining. Instead of deciding that local communities were free under § 28-9.4-5 to designate whomever they wished to be their final contracting authority, the Supreme Court held "that neither § 28-9.4-3 nor § 28-9.4-5 addresses any issue concerning ratification of municipal contracts." 650 A.2d, at page 502. In that respect §§ 28-9.3-2 and 28-9.3-4 are no different. They, likewise, do not address any issue concerning ratification. There is the following inescapable language inProvidence City Council:
 "In the same vein [referring to Betz v. Paolino, 605 A.2d 837 (R.I. 1993)] we are of the opinion that the city council is endowed with the legislative power to ratify collective-bargaining agreements in order to manage the budgetary affairs of the city." Id.
Despite its best efforts to distinguish Exeter-West GreenwichRegional School District, the Supreme Court either overruled it by implication, or severely limited its application. School committees either can or cannot bind City Councils. If they can, City Council ratification is not needed. If City Council ratification is required, they cannot be bound by a school committee, and Exeter-West Greenwich does not apply.
There is not the slightest hint in the Opinion in ProvidenceCity Council that collective bargaining agreements with teachers may be excluded from its impact. The careful distinction ofExeter-West Greenwich suggests that the Court was aware of the implications of its holding on teacher contracts. The Court's excision of the ratification process from the totality of collective bargaining applies with equal force to teacher contracts as to all other collective bargaining agreements. Teacher contracts, like the contract at issue in Providence CityCouncil, must be ratified by the Union before they bind the teachers. It is equally "ludicrous" to suggest that the bargain struck by the Board may not be subject to ratification by its funding authority. Accordingly, the January 11, 1993 document, which purports to be a collective bargaining agreement was subject to ratification by the Providence City Council before it could bind the Board or the City.
A memorandum from Joseph A. Rotella, Legal Counsel to the Board, to Arthur M. Zarrella, Superintendent, dated January 15, 1993, re: "Teacher Contracts," is a part of the City Council records. The memorandum has attached to it the five-page document of January 11, 1993 which represents the agreement entered into by the Board and representatives of the Union. The memorandum is stamped: "In City Council, Mar. 18, 1993, Read and Denied." The stamped legend is signed by Michael R. Clement, City Clerk. The official Journal of Proceedings of the City Council for its regular meeting on March 18, 1993 contains the following entry at page 1279 in the section entitled "Reports from Committees," and sub-headed "Councilman David G. Dillon, Chairman Committee on Finance:"
 "The following is transmitted with recommendation (obviously from the committee to the council) the same be denied: Collective Bargaining Agreement between the Providence School Board and the Providence Teachers Union. Denied, on a motion of Councilman Glavin, seconded by Councilman Lombardi. The motion to deny is sustained."
The Union's effort to convert the committee recommendation on transmittal to the whole body of the Council to a mandate from the Council itself to the Board deserves no further consideration. The City Council not only failed to ratify the agreement it expressly withheld the approval required by §17-27 of the Code of Ordinances.
The Court must conclude that under the rationale ofProvidence City Council, the January 11, 1993 document is "void and unenforceable" as a collective bargaining agreement.
II.
The Union argues that even if the January 11, 1993 document is not valid, the Board and the City are equitably estopped from denying its effectiveness. The Board and the City counter by asserting that the arbitration provision, itself, is contained in the void and unenforceable agreement. Therefore, they say, the City could not be compelled to arbitrate any dispute with the Union. They further point out that, if the City was not subject to arbitration, the Board had no authority to submit the City's interests to arbitration.
Warwick Teachers Union Local 915, AFL-CIO v. Warwick SchoolCommittee, 624 A.2d 849, 850-51 (R.I. 1993) stands for the proposition that the City cannot be bound by the acts of its agent, unless the agent has been specifically authorized to act on its behalf in the matter. By denying ratification of the tentative agreement on March 18, 1993, the City withdrew any actual or apparent authority the Board might otherwise have had to act as its agent pursuant to any collective bargaining agreement.
Furthermore, even if the Board did have some implicit authority to represent the City in labor relations, it could not by arbitration compel the City to be bound to a void agreement. Put another way, the Board and the City do not contend that the arbitration panel merely made a serious error of law in the interpretation of the parity clause, which could not be corrected by the Court, Belanger v. Matteson, 115 R.I. 332, rearg. den.115 R.I. 942, 346 A.2d 124 (1975), cert. den. 424 U.S. 968, 96 S.Ct. 1466, 47 L.Ed.2d 736 (1976). The panel actually granted an award based on a void and unenforceable agreement. The Court agrees that in such a case the award is clearly in excess of the powers of the arbitrators. § 28-9-18(2). There is no contract from which the award may draw its essence or of which it may be even a passably plausible interpretation. Cf. Jacinto v. Egan,120 R.I. 907 391 A.2d 1173 (1978).
The parties have stipulated that, except for the disputed parity clause, the City and the Union have co-existed under the January 11, 1993 agreement in all respects. But the Union does not point to any conduct by the City, or the City Council, which might have led it to believe that the City Council had ratified the agreement. In fact, the Council's denial of ratification was a matter of public record as of March 18, 1993, just before this grievance was filed in April 1993. The complaint which eventually led to the decision in Providence City Council, supra, was originally filed in this Court on December 4, 1992. All parties were cognizant that the validity of § 17-27 of the Code ofOrdinances was pending before the Court. The Union knowingly took the risk that the ordinance would be upheld and would apply to its agreement with the Board, when it decided not to re-negotiate other contractual provisions which might be approved by the City Council.
The City should not be estopped from asserting the position the City Council maintained publicly throughout the pendency of this arbitration. That position was well-known and clearly understood by the Union.
Accordingly, the Union's petition for an Order confirming the award will be denied.
The motion of the City to vacate the award will be granted.
The City will present a form of judgment for entry on forty-eight hours notice to the Union.