Charles R. MANSOLILLO et al.,

v.

The EMPLOYEE RETIREMENT BOARD OF the CITY OF PROVIDENCE et al.

No. 94–146–Appeal.

Supreme Court of Rhode Island.

Dec. 12, 1995.

Richard G. Riendeau and Charles Mansolillo, Providence, for Plaintiffs.

Richard Skolnik, Donald S. Iannazzi and Patrick J. Quinlan, Providence, for Defendants.

## OPINION

BOURCIER, Justice.

This matter comes before us pursuant to an order of the Superior Court granting the joint motion of the parties to certify seven questions of law for our resolution. Appended to the certification is a stipulation of facts agreed to by the parties and filed for purposes of certification pursuant to G.L.1956 (1985 Reenactment) § 9–24–25 and Super.R.Civ.P. 72.

On April 5, 1990, certain city of Providence taxpayers and the city of Providence filed a civil action seeking declaratory and injunctive relief against the Providence City Employees Retirement Board (board) and the Providence city treasurer. That action, C.A. 90–2119, sought a declaration concerning the legality of certain board actions taken at a board meeting wherein the board voted to change certain city pension and retirement benefits for city employees.

After hearing in that civil action, the Superior Court trial justice, on September 24, 1991, entered a written decision. The trial justice found the board's actions to be valid and binding upon the city and denied plaintiff taxpayers', as well as the city's, request for injunctive relief. In her decision, the trial justice ordered counsel for the parties to prepare an appropriate judgment for entry, consistent with the findings contained in the decision. Counsel apparently agreed not to do so and instead began negotiations to work out modification of some of the city's financial obligations resulting from the court's decision. Negotiations among counsel, the city mayor, and the board eventually resulted in what was to be a consent decree, signed by counsel for all parties and presented to the trial justice for entry on December 18, 1991. No appeal was taken from the consent decree, and it became final.

Some four months later on April 8, 1992, this court in an unrelated case, *Betz v. Paolino,* 605 A.2d 837 (R.I.1992), a case involving similar board action, held that the board lacked authority to modify or change city-employee retirement benefits that were previously granted by a special legislative act (P.L.1923, ch. 489) providing for city-worker retirement and pension benefits in the city of Providence. This court reasoned in *Betz* that the board's actions amounted to "legislation" by the board and were not authorized.

*Betz, supra,* apparently prompted the Providence City Council to have second thoughts about its earlier decision to have negotiated and agreed to the consent decree in December of 1991, in C.A. 90–2119. Accordingly, on July 29, 1993, the city council enacted resolution No. 493 in which it requested the city solicitor to commence action in the Superior Court, seeking declaratory and injunctive relief from the previously negotiated city pension and retirement provisions contained in the December 1991 consent decree in C.A. 90–2119.

On September 24, 1993, the city solicitor, in compliance with council resolution No. 493, filed a civil action seeking declaratory and injunctive relief in the Superior Court (C.A.93–5277). The named defendants in that action were the Employee Retirement Board of the City of Providence and the Providence city treasurer. Shortly thereafter, the Public Service Employee's Local Union No. 1033, LUNA, AFL–CIO, and the Providence Retired Police and Firefighter's Association, Inc., were permitted to intervene. Answers to the city's complaint were filed, along with counterclaims and motions for summary judgment. When certain of the motions for summary judgment were assigned for hearing before the Superior Court motion-calendar justice, the parties then elected to request certification of the issues confronting the motion-calendar justice to this court. The parties prepared a "joint motion to certify" and "jointly filed a Stipulation of Facts" from which they gleaned seven questions to be certified to this court, purportedly pursuant to § 9–24–25 and Super.R.Civ.P. 72.

## I

### The Certification

■ It appears from a reading of the agreed stipulation of facts that the certification of the seven questions presented to us was motivated more by the desire of the parties to obtain speedy resolution of their pending Superior Court case without the necessity of a trial rather than by the inability of the motion-calendar justice to resolve the certified legal questions at the Superior Court level. Such "short-circuiting of proper

trial procedure" is not to be encouraged or permitted. *Richardson v. Bevilacqua,* 115 R.I. 49, 53, 340 A.2d 118, 120 (1975); *see also, State v. Walsh,* 108 R.I. 518, 523, 277 A.2d 298, 301 (1971).

Questions of law such as the nature of the seven certified here, when answered, will make any trial of the case below totally unnecessary, except for the outstanding counterclaims, and leave nothing for appeal except on the counterclaims. In *Easton v. Fessenden,* 63 R.I. 11, 14–15, 6 A.2d 714, 715 (1939), we said:

> "The responsibility of passing upon important and doubtful questions rests upon the trial court in the first instance. A question of law should not be certified to this court as one of doubt and importance unless, after careful consideration, a justice of the superior court or of a district court, who is actually required to make a ruling or decision necessarily involving the determination of an important and doubtful question, entertains such doubt concerning the question as to make him feel that he is unable to reach a satisfactory conclusion in respect thereto."

In light of the procedural record before us, we will consider for response only that certified question No. 3. Our response to that question may render further consideration of the remaining six questions moot, but we will leave that determination to the trial justice and the parties who will, in any event, be required to address the various counterclaims that remain for trial.

## II

### The Certified Question

"3. Whether the Consent Decree entered December 18, 1991 is final and binding so that it cannot be vacated, modified, negated, amended and/or affected without the mutual consent of the parties thereto and/or those affected thereby."

■ We begin our response to the above-certified question by noting from the Stipulation of Facts the following:

> "In *City of Providence, et al. v. The Employees' Retirement Board of the City*

*of Providence, et al.*, C.A. No. 90–2119, the City of Providence was a party plaintiff in its capacity as a governmental entity and municipal corporation. In said action the City of Providence and plaintiffs therein authorized Joseph V. Cavanagh, Esq. to act as their attorney therein." Stipulation of Facts No. 2.

"The City of Providence, knowingly and freely, entered into said consent decree, and knowingly and freely gave up its right to appeal said decision of Mrs. Justice Gibney to the Supreme Court." Stipulation of Facts No. 9.

"Said consent decree was intended to conclude and resolve the matter with finality in all respects on such terms and conditions as set forth in said consent decree." Stipulation of Facts No. 8.

We specifically take note of the fact that nothing in the stipulation of facts submitted by the parties indicates or suggests any fraud, mutual mistake, or actual absence of consent on the part of any of the parties who negotiated, agreed upon, and presented the consent decree to the Superior Court for entry in C.A. 90–2119. We have long recognized the sanctity of final judgments entered by the various courts in this state and, in particular, consent judgments. We have said that absent fraud, mutual mistake, or actual absence of consent, a judgment entered by consent cannot " 'be opened, changed or set aside without the assent of the parties.' " *DeFusco v. Giorgio*, 440 A.2d 727, 729 (R.I. 1982); *see also, Hasman v. Hasman*, 655 A.2d 256, 257 (R.I.1995). The integrity of any decree or judgment is necessarily derived from its entry by the particular court in the exercise of its judicial function. "The fact that it was consented to does not in any way detract from its efficacy. It is to be given the same force and effect thereafter by everyone, including the court, as though it had been entered after a hearing." *Burns v. Burns*, 92 R.I. 278, 281–82, 168 A.2d 141, 143 (1961); *see also, Palmigiano v. DiPrete*, 700 F.Supp. 1180, 1192 (D.R.I.1988).

The parties to the consent decree in C.A. 90–2119 have had their day in court. By entering into the December 1991 consent decree, the city of Providence thereby waived and gave up any defenses it may have had relating to the subject matter underlying the consent decree. *O'Hearn v. O'Hearn*, 506 A.2d 78, 80 (R.I.1986) (and cases cited therein); *DeFusco*, 440 A.2d at 729. It appears clear to us that the city of Providence is now attempting in C.A. 93–5277 to relitigate all of the claims and defenses to the board's actions that it previously waived and gave up in the consent decree in C.A. 90–2119.

The United States Supreme Court in *United States v. Swift & Co.*, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932), had occasion to consider the ramifications and finality of a prior consent decree entered into by several meat-packing companies in order to avoid possible antitrust actions against them. The Supreme Court denied a later request by some of those companies to set aside the consent decree. Justice Cardozo, writing for the Supreme Court, said,

"Wisely or unwisely, they submitted to these restraints upon the exercise of powers that would normally be theirs. They chose to renounce what they might otherwise have claimed, and the decree of a court confirmed the renunciation and placed it beyond recall." *Id.* at 119, 52 S.Ct. at 464, 76 L.Ed. at 1008.

In this case, the city of Providence has similarly renounced all that it might have claimed in C.A. 90–2119 and has placed it beyond recall.

This court has at times likened a consent decree, such as in this proceeding, as being " 'in the nature of a solemn contract or agreement of the parties made under the sanction of the court.' " *Durfee v. Ocean State Steel, Inc.*, 636 A.2d 698, 703 (R.I.1994). Where parties to litigation, acting in good faith, settle their litigation, which as in C.A. 90–2119 required compromises on both sides, courts will enforce the compromised settlement "without regard to what result might, or would have been, had the parties chosen to litigate." *Homar, Inc. v. North Farm Associates*, 445 A.2d 288, 290 (R.I.1982) (quoting *J. Kahn & Co. v. Clark*, 178 F.2d 111, 114 (5th Cir.1949)).

It appears to us that the city of Providence in its pending action (C.A.93–5277) is simply

attempting to have the Superior Court pull it out of what it now believes was not too good a bargain when it entered into the consent decree in C.A. 90–2119. At the time that it entered into that consent decree, it believed that it was making a good and wise choice. Some four months later when *Betz, supra,* was decided, it had second thoughts about its earlier decision. "It is a basic tenet of contract law [applicable here] that the contracting parties can make as 'good a deal or as bad a deal' as they see fit." *Durfee,* 636 A.2d at 703. The city of Providence, by its admission made here through its stipulated facts, authorized its attorney in C.A. 90–2119 to negotiate a better result than it potentially faced under the terms of the decision entered by the trial justice. The city, along with the other parties to that case, delayed the entry of a final judgment so as to toll the appellate time requirements and to permit the parties to continue settlement negotiations. The result of those negotiations was the December 1991 consent decree. According to its Stipulation of Facts No. 8, the city's authorization to its attorney to negotiate the better deal was intended by the city to "conclude and resolve" the board-action issues in contention "with finality in all respects, on such terms and conditions as set forth in the consent decree."

Because the agreement it made in the December 1991 consent decree may not have seemed as palatable to the city in April of 1992 when *Betz, supra,* was decided does not now permit the city to unilaterally walk away from its obligations thereunder. *See, e.g., O'Connell v. Finlay,* 583 A.2d 546, 548 (R.I. 1990); *Grady v. Grady,* 504 A.2d 444, 447 (R.I.1986). The city's agreement with the parties to the litigation in C.A. 90–2119, which resolved all of the disputed board-action issues therein, ripened into a final and unappealed decree-judgment of the Superior Court. As such, it mandates compliance therewith by the parties.

The city's reliance upon *Paul v. Fortier,* 117 R.I. 284, 366 A.2d 550 (1976), is misplaced. *Fortier* involved a default judgment, not a consent-decree judgment.

For the reasons hereinabove set out, we respond to the certified question No. 3 in the affirmative.

The papers in this case are remanded to the Superior Court for further proceedings on the matters remaining there to be litigated; and in reference to those matters, as any may be impacted by the consent decree in C.A. 90–2119, those proceedings shall be in accordance with this opinion.