DECISION
This action is before the Court on the motion of the City of Providence, through several of its governmental agencies, to vacate the consent judgment entered on December 18, 1991. The City argues that the consent of counsel for the plaintiffs to the entry of that judgment was beyond his authority because he was not authorized to consent by the City Council. Accordingly, it says the judgment is void and it should be vacated under Rule 60(b)(4).
Various parties, including the Employees Retirement Board of Providence, itself an agency of the City of Providence, as well as other groups and associations, all of whom represent present and prospective beneficiaries of the retirement system of the City of Providence, as intervenors, oppose the motion. They argue that the Opinion of the Supreme Court in Mansolillo v. Retirement Board,668 A.2d 313 (R.I. 1995) bars the City and any of its agencies from taking any action inconsistent with the judgment in this case. That Opinion and the judgment of this Court in Charles R.Mansolillo, in his capacity as City Solicitor, and the City ofProvidence. Plaintiffs. vs. The Employee Retirement Board ofProvidence, and others, et cetera, Civil Action Number 93-5277, they say collaterally estops the City from asserting the validity of the consent judgment in this case. They also argue that this motion is untimely because it was not made within a reasonable time after the judgment became final. Finally, the opponents contend that by vacating the judgment the Court will cause an ordinance, which eliminates some of the pension benefits protected by the judgment, to take effect in violation of the "contract" clause of the U.S. Constitution.
I.
It is almost impossible to untangle the confusing history of the several strands of litigation which form the tapestry of the City's pension system. This case began on April 5, 1990 as a complaint by two residents and taxpayers of the City, who were also employees of the City, thereby members of the employee retirement system. The individual plaintiffs purported to join the City as a co-plaintiff. They sued the retirement board and the City Treasurer in his official capacity. They sought to nullify certain actions of the Retirement Board taken on and after meetings on October 26, 1989 and December 6, 1989, which would have affected pension benefits. The plaintiffs claimed that the actions of the Retirement Board exceeded their powers under the Home Rule Charter and the Public Law of 1923 as amended, regarding the administration of the pension system. The parties filed a stipulation of facts on June 11, 1990 and submitted memoranda of law. On September 24, 1991, Mrs. Justice Gibney filed a rescript decision.
In her decision Justice Gibney found that the Retirement Board possessed, "plenary power to administer and operate the city employee retirement system." Accordingly, she decided that the actions of the Board at its October 26 and December 6, 1989 meetings were within its authority and were valid and binding. She left it to counsel to frame appropriate orders for entry.
While the Betz appeal was pending, on December 18, 1991, the parties entered into a consent decree, instead of preparing a judgment for entry in accordance with the rescript decision. That consent decree memorialized as a judgment certain amendments to the by then obsolete Public Law establishing the City's retirement system. The critical changes were the establishment of minimum base pensions for employees who retired before January 1, 1992 and 1993, respectively, and extending annual cost of living retirement adjustments (COLAs) to all retired employees of the City in different percentages for different classes of employees, with a special provision for public safety employees who retired after January 1, 1990 effective on January 1, 1994. The actions of the Board at the October 26 and December 6, 1989 meetings were declared valid, binding and operative. The consent decree was assented to as to form and substance by counsel for both sides. It was entered by the Court on December 18, 1991.
In the meantime the case, which came to be decided as Betz v. Paolino, 605 A.2d 837 (R.I. 1993), was pending on appeal in the Supreme Court. In that case the question for decision was whether or not the Board was empowered to provide for new or additional pension benefits different from those in the enabling legislation or adopted by the City Council pursuant to the Home Rule Charter. The Betz opinion, denying that power to the Board did not come down until April 8, 1992.
On April 8, 1996, the plaintiff, City of Providence, was found by this Court to be in contempt of Court for failure to comply with the terms of the consent decree. The plaintiff was permitted to purge itself from the contempt by making "prompt" payment of benefits ordered by the consent decree. The Court, by separate order, found the consent decree to be the "law of case" and that it therefore bound the City. A motion by the City for relief was denied on the ground that the Court would not grant relief to a party in contempt. Those rulings have been appealed to the Supreme Court, but this case has been remanded for hearings on the City's purgation. City of Providence v. TheEmployee Retirement Board of Providence, et al., No. 96-265A. Order, June 26, 1996.
In the course of hearings on the question of whether or not the city had purged itself of contempt the Court allowed the City Council to intervene to permit it, and the City, to argue the issue of whether or not the consent decree was void for lack of authority by counsel for the City to have consented.See Parrillo v. Chalk, 681 A.2d 916 (R.I. 1996). The resolution of that issue depends upon the effect of yet another strand of litigation.
Based on evidence developed during the hearings on the City's efforts at purgation, it appears that, notwithstanding the Betz decision, the City, through its Retirement Board and Administration, continued to abide by the consent decree during 1992 and 1993. In 1993, however, the City Council decided to take the question of the power of the Retirement Board to Court. Thus began the litigation which led to the Opinion of the Supreme Court in Mansolillo v. EmployeeRetirement Board of the City of Providence, supra, authored by the former justice of this Court, whose decision was overruled inBetz, supra.
The travel of the 1993 case in this Court is accurately reported in Mansolillo, supra, 668 A.2d, at page 315. What is especially noteworthy is the fact that the plaintiffs inMansolillo, are the City Solicitor, in his official capacity, and the City, at the request of the City Council. The authority of the City Solicitor to act for the City in the Mansolillo case is unquestioned. Once again, the litigants entered into a stipulation of facts. The City does not disclaim the authority of the City Solicitor to agree to the stipulated facts. Thereafter, this Court was induced to certify seven questions to the Supreme Court pursuant to G.L. 1956 (1985 Reenactment) §9-24-25.
The Supreme Court answered one question, did not answer the other six, and remanded the case to this Court "for further proceedings on the matters remaining there to be litigated; and in reference to those matters, as any may be impacted by the consent decree in C.A. 90-2119, those proceedings shall be in accordance with this opinion." 688 A.2d, at page 317. The question was: "Whether the Consent Decree entered December 18, 1991 is final and binding so that it cannot be vacated, modified, negated, amended and/or affected without the mutual consent of the parties thereto and/or those affected thereby." The answer: Yes. The answer was memorialized as a declaratory judgment of this Court on February 19, 1996. An appeal [!] has been taken from that judgment, which has not been disposed as of this writing, but the judgment has not been stayed.
While Mansolillo was pending, on January 10, 1994, the City Council adopted two ordinances regarding pension benefits affected by the Consent Decree. Chapter 1994-1, entitled: "An Ordinance ordering termination of certain cost-of-living adjustments (COLA) and other benefits for retirees, as amended," purported to terminate the effectiveness of the actions taken by the Retirement Board at its December 6, 1989 meeting. A second ordinance, Chapter 1994-2, entitled, "An Ordinance in amendment of Sec. 17-189 of the Code of Ordinances of the City of Providence establishing additional benefits payable to retired employees or their beneficiaries," restored the minimum base amounts ordered under the Consent Decree to certain classes of retirees. It was not made clear in the hearings when the 1994 ordinances, which primarily affected Class A, or other than public safety employees, were implemented.
While Mansolillo was still pending in the Supreme Court, on August 1, 1995, the City Council adopted Chapter 1995-17, entitled: "An Ordinance amending certain sections of the Code of Ordinances Article VI entitled `Retirement System'," which reduced the COLA for Class B, public safety employees to 3% per year without compounding, and declared all such adjustments to be voluntary gratuities. AfterMansolillo had been decided, and the City's petition to reargue had been denied on February 9, 1996, the City Council took another swipe at COLAs on February 23, 1996 by adopting Chapter 1996-4, entitled: "An Ordinance amending Section 17-197 of the Code of Ordinances entitled `Cost of Living Adjustment, ['] as amended," which further reduced Class B COLAs to 3% non-compounded of the first $10,000 of benefits for each such beneficiary. The upshot of that ordinance was the contempt proceeding in this case.
II
There is no room for dispute of the fact that the attorney for the City who assented to the Consent Decree did not have specific authority to consent from the City Council. This Court is satisfied, however, that the City Council had notice of the consent decree on December 19, 1991, the day after it was entered. This Court is further satisfied that in 1993 the City Council authorized the City Solicitor to commence and prosecute litigation to avoid the validity of the Consent Decree. To the extent that the assenting attorney in 1991 lacked authority to assent, the City, and its Council, and its Solicitor were well aware of that lack of authority when action was commenced in 1993 to negate the impact of the 1991 consent judgment.
The City Solicitor was undeniably authorized by the City, and its Council, to stipulate to the truth of Stipulation of Facts No. 2 in Mansolillo: —
 "In City of Providence, et al. v. The Employees' Retirement Board of the City of Providence, et al., C.A. NO. 90-2119, the City of Providence was a party plaintiff in its capacity as a governmental entity and municipal corporation. In said action the City of Providence and plaintiffs therein authorized Joseph V. Cavanagh, Esq., to act as
their attorney therein." (Emphasis supplied).
By this stipulation the City judicially admitted that its attorney in this case in 1991 had authority to consent to the decree entered in December 1991. See Gross v. Glazier,495 A.2d 672, 675 (R.I. 1985) ("Judicial estoppel precludes a party from taking a position inconsistent with the position previously taken with respect to the identical party in an earlier law suit.") If parties are not judicially bound by the judicial admissions of fact by the attorneys who represent them, we will need to revise our entire system of civil adjudication. Any argument that the City did not judicially admit that Attorney Cavanagh had authority to consent to the consent decree is unseemly equivocation. It is inconceivable that the City Solicitor, knowing that Attorney Cavanagh lacked authority to consent to the December 1991 consent decree, would agree on behalf of the City to Stipulation of Fact No. 2 in the 1993 case. How can the parties have asked the Supreme Court to pass on the "final and binding" nature of the consent decree without having disclosed to the Supreme Court that counsel assenting to entry on behalf of the City lacked authority? This Court concludes that the City is bound by its admission in the 1993 case.
Even if it had not admitted that its attorney in fact had authority to consent to the decree, the doctrine of collateral estoppel would apply. The City of Providence and the Employees' Retirement Board were and are parties in both this and the Mansolillo case. Identity of parties. The validity of the consent decree is in question in this case on this motion as it was in Mansolillo. Identity of issue. Nothing, except its admission of fact, prevented the City from raising Mr. Cavanagh's lack of authority to consent in the Supreme Court proceedings in the Mansolillo case. In fact, the precise issue was raised and considered by the Supreme Court on the petition of the City of Providence to reargue the Mansolillo
case. On February 9, 1996, the Supreme Court denied the petition, not with its customary terse Order, but with an express finding that it had "carefully reviewed the city's
petition and the memoranda filed by the various parties . . ." This Court will not hear the City, or any of its agencies or branches of government, argue that the review was anything less than careful.
The Court has carefully considered the argument of the City that its Council is a separate judicial person from the City itself. The argument further runs that, since the Council did not consent to the 1991 consent decree and since it was not a named party in the Mansolillo case, it is bound neither by the consent decree nor the answer to the certified question in the Mansolillo case. Boiled down to its most abstract essence the part is arguing that it is greater than the whole.
The City, according to its Home Rule Charter of 1980, is a body politic and corporate of its inhabitants. Charter§ 102. The City's power of self-government is vested in its mayor and city council. Charter § 105. It is plain that the two branches of city government are agencies of the city, itself, as a body politic and corporate. There is no doubt whatever that the power to levy taxes is vested in the City Council. The City is probably also correct that only the Council may authorize the settlement of claims against the City which can involve the direct expenditure of the City's funds. It is also true that the Courts have recognized the standing of different agencies or branches of the city to litigate with each other, or on behalf of the City with third parties. See, for example, Providence City Council v. Cianci,650 A.2d 499 (R.I. 1994).
With the commencement of the Mansolillo case the City Council, as an agency of the City, had no interest in the pension power question different from that of the City, or the rest of the City government, as a whole. Its interest will be fully subsumed by those of the City and were fully represented by the City's representatives in that litigation. The Council's argument that it was not a party before this Court and the Supreme Court in the Mansolillo case fails. All of the City government was before the Courts. All of them are bound by the Supreme Court's answer to the certified question and this Court's declaratory judgment. The consent decree is final and binding on the City, and all its agencies, departments and branches. The Mansolillo case is, in effect, a collateral attack on that decree. It has failed. The consent decree has survived a full collateral attack.
III.
This Court has proceeded directly to the merits of the motion of the City and its City Council to vacate the consent decree under Rule 60(b)(4) without considering arguments regarding timeliness. The form of Rule 60(b) in effect on December 18, 1991, when the consent decree was entered required that a motion in this Court to vacate a judgment for any of the grounds mentioned in the Rule had to be brought within one year. Although the Council was on notice at the time of its entry of the grounds alleged now for declaring the consent decree void, it allowed more than the year to elapse before it took any action to set it aside, either by litigation or legislation. TheMansolillo case is obviously a belated effort by the City with direction and authority of the City Council to set aside the consent decree by an independent action as expressly mentioned in the last sentence of Rule 60(b), as then in effect.
On September 5, 1995 the time period for filing a motion under Rule 60(b)(4) was enlarged to "within a reasonable time." Whether that enlargement applies to every judgment of this Court, whenever it was entered, or only to those judgments entered after September 5, 1995 is a nice question. So is the question of whether this motion was filed "within a reasonable time", if the amended Rule applies. Since the motion is without merit, it is not necessary to consider issues of timeliness.
IV.
The question of whether or not the amendments to the retirement system by the City Council in 1994 and 1995 are valid is undoubtedly a serious one. So is the question of whether or not the Mansolillo case renders the issue moot. Since the Court will not vacate the judgment, none of these questions needs to be addressed at this time.
The construction of the consent decree, nonetheless, remains open with respect to the question of whether or not its prospective effect survived the action of the City Council in 1994 and thereafter. Counsel for the beneficiaries argue that the consent decree provides an immutable benefit for all time. Counsel for the City argue that under Betz they can change pension benefits, subject to applicable constitutional or statutory constraints. The issue of whether and to what extent COLA benefits to current and prospective retirees are subject to the "contract clause" or the "due process clause" is a difficult problem which does not need to be answered to decide this motion. That problem still lies in the core of the Mansolillo case, which is still pending before this Court, subject to the pending appeal of that case in the Supreme Court. The consent decree in this case remains in full force and effect. What that force and effect as to now current and prospective retirees may be can be litigated in this Court in the Mansolillo case, so far as they may remain open questions in light of the question already answered.
For all the foregoing reasons the motion is denied. The defendants will present an appropriate Order for entry on notice to the plaintiffs.