DECISION
This matter is before the Court following an order of the Supreme Court dated September 5, 1997 (the remand order) remanding the case for hearing on and determination of certain issues related to a consent judgment dated December 18, 1991 in that certain matter docketed in the records of this court as "City of Providence. et al. vs. Employee Retirement Board" C. A. No. 90-2119 (The Providence Case). The remand order stated ". . . provided, however, that under no circumstances shall the issue of the vacating of such consent judgment be relitigated in the Superior Court."
The remand order concluded by requiring that following the hearing before this Court, the papers were forthwith to be returned to the Supreme Court.
Basically, the evidence tended to show that on December 18, 1991, a Consent Decree was entered in the City of Providence case which purported to provide for certain minimum pension payments and cost of living increases for members of the Providence retirement system. Several years later, this case (Mansolillo
case) was brought at the request of the City Council of the City of Providence basically attacking the validity and binding nature of the Consent Decree.
The Mansolillo case was "fastracked" to the Supreme Court by an agreed stipulation of facts and the certification by the trial court to the Supreme Court of seven questions. By opinion rendered on December 12, 1995, the Supreme Court made clear that "such short-circuiting of proper trial procedure is not to be encouraged or permitted." However, the court did respond to one of the certified questions, Question No. 3, which read as follows — "3. Whether the Consent Decree entered December 18, 1991 is final and binding so that it cannot be vacated, modified, negated, amended and/or affected without the mutual assent of the parties thereto and/or those affected thereby?"
Specifically, the question was answered in the affirmative (See Mansolillo v. Employee Retirement Board, 668 A.2d 313 (R.I. 1995). In the Mansolillo case, the Supreme Court noted that its ". . . response to that question may render further consideration of the remaining six questions moot, but we leave that determination to the trial justice and the parties. . . ."
With all of the foregoing as background, this Court notes that upon remand it conducted hearings herein which covered several half-day sessions and which included the taking of some limited evidence (although this Court believes that it afforded the parties wide latitude with respect to the production of evidence so as to permit the development of as fully encompassing a record as possible for further Supreme Court review as contemplated by the remand order) and a great amount of legal argument with respect to the issues before the court.
From the evidence adduced, this Court finds the following facts (in addition to those heretofore stipulated to by the parties):
(1) The City Council of the City of Providence never by resolution, ordinance or otherwise affirmatively voted to authorize the Consent Decree entered on December 18, 1991 in the City of Providence case.
(2) The City Council of the City of Providence formally was advised at its meeting on December 19, 1991, by one of its members, an ex-officio member of the Employees' Retirement Board, that the Consent Decree had been entered into.
(3) Various senior city officials in their official capacities in May 1992 were in receipt of a communication from plaintiff city solicitor dated May 12, 1992 setting forth that "Said Consent Decree remains a valid order of the Superior Court; consequently, currently its terms remain in effect." (See defendants' Exhibit X)
(4) On January 10, 1994, the Providence City Council approved Chapter 1994-1, an ordinance which purported to declare amendments to Sections 9(1)(c), 9(15)(a)(b) and Section 17 of Chapter 489 Public Laws 1923 contained in the Consent Decree entered in The Providence Case to be ". . . of no force and effect" and further provided that all payments of costs of living adjustments (COLA) and other benefits as provided for in the Consent Decree were ordered terminated.
(5) On January 10, 1994, the Providence City Council further approved Chapter 1994-2, an ordinance which purported to establish additional benefits for retired Class A employees and their beneficiaries and additional benefits for retired Class B employees and their beneficiaries.
(6) On August 1, 1995, the Providence City Council approved Chapter 1995-17, an ordinance which inter alia contained a legislative finding that "(8) . . . it is necessary to promote measures and impose solutions that will result in a significant reduction in personnel costs by modifying retirement benefits." That chapter also contained substantial declarations of public policy and thereafter made many changes in and to the City Code of Ordinances with respect to the "retirement system."
Section 9 of 1995-17 by its language established for Class B employees a COLA of 3% (not compounded) in place of the prior 5% compounded COLA and by Chapter 1996-4, an ordinance approved by the City Council on February 23, 1996, the Class B COLA was further altered so as to provide, in addition to the retirement allowance (base), an amount equal to 3% not compounded, on the first ten thousand dollars of said base.
(7) The Court hereby incorporates by reference each of the mentioned legislative enactments (ordinances) of the City Council of the City of Providence.
(8) Buck Consultants, Inc., a firm which provides actuarial valuation services to the Employees' Retirement System of the City of Providence has prepared reports on the valuation of the Employees' Retirement System of the City of Providence as of June 30, 1995 (Plaintiffs' Exhibit 3) and as of June 30, 1996 (Plaintiffs' Exhibit 4). The report as of June 30, 1996 takes into account the provisions of the Consent Decree with respect to the period ended January 10, 1994. As to persons who retired post that date and active members of the system, the valuation assumes the binding affect of City Council ordinances approved on January 10, 1994 and thereafter. (See findings of fact 4, 5 6 and 7,supra; see also letter of transmittal dated March 24, 1997 attached to and forming part of Exhibit 4). Those ordinances, as hereinafter indicated, provide for lesser benefits than the Consent Decree and, therefore, present a more favorable picture of the long-term viability and valuation of the funds reported on and valued in Plaintiffs' Exhibit 4 than would be the case without that assumption.
(9) The market value as of September 30, 1997 of the retirement fund was $342,315,731.25.
(10) The unfunded accrued liability as of June, 1996 of the retirement fund was $411,945,491.
(11) The monthly amount paid out by the retirement fund as of November 1997 was $3,710,677.12.
(12) Currently, Class A members are required to contribute towards their retirement benefits an amount equal to 8% of their compensation and Class B members are required to contribute towards their retirement benefits an amount equal to 9.5% of their compensation.
It is upon this factual background superimposed upon the Supreme Court opinion in Mansolillo, 668 A.2d 313 and the remand order that this matter is before the Court for decision. As the Court perceives this matter, basically, there are two issues before it at this time:
 (1) In view of the Supreme Court opinion of December 12, 1995 in Mansolillo, et al. vs. The Employee Retirement Board of the City of Providence, 668 A.2d 313 and the further proceedings in this case, including without limiting the generality of the foregoing, the remand order, are the answers to the six unanswered certified questions moot?
 and,
 (2) Should the Consent Decree be read with respect to the COLA provisions to apply only to retirees (and beneficiaries of retirees) who upon the effective date of the Consent Decree, December 18, 1991, were retired Class A employees or retired Class B employees?
This Court's quick answers to the questions framed above, generally, are "Yes" and "Yes."
This Court believes, predicated upon those answers that a constitutional inquiry under Article I, Section 10 of the Constitution of the United States and Article I, Section 12 of the Rhode Island Constitution (provisions of said Constitutions precluding state legislative action impairing the obligations of contract) is not necessary to its final resolution of this matter.
The Court seriatim will discuss the issues framed above, its answers thereto and its reasons for declining to undertake a constitutional analysis with respect to the impairment of obligations of contract.
This Court, in reaching the answers above stated with respect to the issues as it has framed them could, of course, not operate in a vacuum or indeed turn to a clean slate upon which to base its decision. This Court notes that, indeed, plaintiff in its memorandum in support of petition to re-argue, explicitly invited our Supreme Court: ". . . to remand the entire matter without a definitive answer to question number 3. . . ." While the plaintiff's motion was granted, this Court was precluded from litigating (or relitigating) the issue of vacating the consent judgment. Basically, the answer to question number 3 was left in place. This Court reads the remand order, as indeed do the parties, (although with different assumed consequences) to leave standing that court's decision of December 12, 1995. That being the case, it then follows that unless and until otherwise determined by our Supreme Court, the Consent Decree entered into on December 18, 1991 is final and binding so that it cannot be vacated, modified, negated, amended and/or affected without the mutual consent of the parties thereto and/or those affected thereby.
Accordingly, it seems to this Court that the answers to the other questions propounded by the parties to the Supreme Court inMansolillo are of no consequence except as to Question #7.
Despite the Consent Decree and its specific provisions dealing with COLA type benefits, the City Council has enacted a number of ordinances which defendants argue are at odds with the clear mandate of specific provisions of the Consent Decree. Defendants argue that our Supreme Court in Mansolillo at 316 ". . . likened a Consent Decree, such as in this proceeding, as being `in the nature of a solemn contract or agreement of the parties made under the sanction of the court; Durfee v. OceanState Steel, Inc., 636 A.2d 693, 703 (R.I. 1994). Where parties to litigation acting in good faith, settle their litigation, which as in (the City of Providence case), required compromises on both sides, courts will enforce the compromise settlement `without regard to what result might or would have been, had the parties chosen to litigate.'"
There is a binding contract and, indeed, a valid binding court order. How can the essence of that contract — order be breached and/or violated? Shouldn't the offending acts (the ordinances referred to in findings of fact 4, 5, and 6) be declared null and void and of no force and effect?
In order to properly respond to the last posed question, it is necessary for this Court to undertake an analysis of just what the parties to the Consent Decree had agreed to. As to that issue, it is clear that the parties to this litigation are at opposite ends of a continuum. Plaintiffs argue that the Decree speaks as of the date of its entry, that is to say, December 18, 1991 and that the term "retired Class A employees" or "retired Class B employees" as used in the COLA provisions of the Consent Decree referred to those who as of that date in fact were retired members of one or the other of Class A or Class B; while defendants urge upon this Court an interpretation of the same language so as to include all employees retired as of that date and to retire after that date in perpetuity (so as to include existing employees retiring after December 18, 1991 and, indeed, so as to include employees who first became employed subsequent to that date and even to include those who may be born after that date who subsequently become Class A or Class B employees of the City).
A resolution of which of these interpretations, if either, is correct is necessary in the first instance as a basis for determination of the effect of City of Providence ordinances 1994-1, 1994-2, 1995-17 and 1996-4. It is, of course, clear to this Court that the underlying bases for those ordinances (expressly stated in 1994-1) is that the Consent Decree amendments to the retirement law: ". . . are and have been an infringement upon the legislative function, prerogative and jurisdiction belonging to the City Council and not to the retirement board or the judicial branch of government . . ." and that that basis has been invalidated by Mansolillo, supra. Despite such judicial determination, the ordinances and their operative provisions still should stand if (i) the Consent Decree is properly interpreted so as to be not inconsistent with such operative provisions, or (ii) even if inconsistent, represent a constitutionally proper exercise of legislative power so as to impair the provisions of a pre-existing contract. The view taken by this Court herein makes unnecessary an examination of the latter issue and the impact of Article I, Section 10 of the United States Constitution and Article I, Section 12 of our state constitution and the even more difficult analysis as to whether when the contract impaired is in the form of a judicial decree, consensual or otherwise, it ever is susceptible to abrogation or impairment by legislative action.
We begin then our analysis of the specific issue as to the correct interpretation of and the meaning of the pertinent language of the Consent Decree by noting that it in form and content purported judicially to amend certain provisions of "an Act to provide for the retirement of employees of the City of Providence" (Public Law 1923, Ch. 489 as amended from time to time). It is of historic significance that at the time of the Consent Decree, the City of Providence had long since adopted, with the consent of the legislature, a home rule charter, so called, and further that the Consent Decree was entered several months prior to our Supreme Court's opinion in Betz v. Paolino,605 A.2d 837 (RI 1992) which essentially held that the retirement board was without legislative authority and that the City Council possessed all municipal legislative power in the City of Providence. I say that those facts are of historical relevance only because my view of Mansolillo, supra precludes my attaching any dispositive legal effect to those facts. The Decree itself added and/or modified several sections or subsections of Section 9 of the retirement board. Specifically:
I (a) Section 9(1)(c) setting forth the manner and requirements for a member of the retirement system retired so as to be eligible for benefits from the system; and
(b) Section 9(15)(a) and (b) setting forth the manner of establishing base, monthly retirement benefits for all Class A and Class B employees who retire prior to January 1, 1992, effective on January 1, 1992, and who retire prior prior to January 1, 1993, effective on January 1, 1993; and
II Section 17. In the first instance providing or modifying existing COLA benefits. It is with respect to the affect of this section and the language found therein that this Court finds of consequence the issue raised by certified question #7 in the Mansolillo case. Whether ordinance 1994-1 and 1994-2[1] effectively and lawfully amended the retirement ordinance so as to remove the benefits conferred by said Consent Decree?
Rather than parsing through the language and applying the arguments of each side to the basic issue here, the Court believes that our case law mandates that the language used in the Consent Decree is to be given its plain and usual meaning if possible. Accordingly, when reviewing the Consent Decree entered on December 18, 1991 and determining in that language the meaning of the terms "retired Class A employee" and/or "retired Class B employee," this Court has concluded that the plain meaning of such term requires an interpretation to mean those who on that operative date, in fact, were either a retired Class A or Class B employee. Had the parties intended a more expansive meaning, as contended by the defendants, they could have and would have said "retired Class A employees and Class A employees who thereafter retire." This Court's adopted interpretation is consistent with contemporaneous writings at and about the time of the entry of the Consent Decree by city officials, i.e., the press release of December 17, 1991, which is Exhibit J to plaintiff's memorandum following remand pursuant to Supreme Court order of September 5, 1997 (hereinafter plaintiffs' post-remand memo). Pages 2 and 3 states that ". . . All Class A retirees (former general municipal employees) shall receive . . . for those who retire on or before January 1, 1992. . . ."[2]
Also, see letter mailed on December 18, 1991 to retirees (Exhibit P-1 to plaintiffs' post-remand memo) wherein it is stated "In addition, on January 1, 1992, an annual 3% compound cost of living adjustment . . . shall become effective for all current Class A retirees or their beneficiaries."
It is clear to this Court that those contemporaneous writings support plaintiffs' interpretation of these specific provisions here under analysis and requires this Court to hold that nothing in the Consent Decree precluded the City Council from enacting the various ordinances referred to specifically and by implication in the aforequoted certified question #7.
Moreover, while this Court believes that the City may have had the power to cede its powers to modify the COLA provisions of the retirement act (or ordinance) as the case may be, it is only when that power is expressly and knowingly given up that this Court would find on this issue for the defendants. That has not been established to the satisfaction of this Court.
The Court here notes that defendants tell us that such a reading of the Consent Decree is precluded under the doctrine of "law of the case" by Judge Israel's decision allowing purgation by the City with respect to certain contempts found by him because of refusal by the City to make certain COLA payments to members of the system who retired on or before the date of the enactment of ordinances 1994-1 and 1994-2. This Court notes that Judge Israel's bench decision announced on September 20, 1996 was not in this case, but rather was in the City of Providence case. Accordingly the doctrine of "law of the case" should have no application; however, if one were to argue that essentially Cityof Providence and Mansolillo really are the same case, still the doctrine would not be applicable for as Judge Israel carefully pointed out in his decision, it [the decision] only was for the purpose of permitting the City to purge its contempt and, as he further stated, ". . . just because I have used a cutoff date of January 10, 1994, I am making no ruling with respect to employees of the City, of that or any other date, nor am I making any ruling with respect to a time of so-called vesting with respect to that date or any other date, nor am I making any ruling that the actions taken by the City Council on that or any other orlater date are valid or invalid, constitutional or unconstitutional, permissible or not." (emphasis added).
Clearly, Judge Israel did not rule with respect to the issue before this Court and, thus, the doctrine cited by defendants is inapplicable.
Accordingly, and consistent with the remand order of the Supreme Court dated September 5, 1997 and the Supreme Court's recent order of September 10, 1998, the parties are ordered forthwith to agree on and present an appropriate order reflecting this Decision. If the parties are unable so to do by November 20, 1998, then they separately shall, on or before November 27, 1998, submit competing orders and the Court shall notice a hearing thereon.
[1] . . . and presumptively 1995-17 and 1996-4.
[2] While this date is two weeks after the date on which the Consent Decree was entered, this Court attaches no greater significance to that fact.