M. JAMES VIEIRA *vs.* JAMESTOWN BRIDGE COMMISSION.

JULY 26, 1960.

PRESENT: Condon, C. J., Roberts, Paolino and Powers, JJ.

POWERS, J. This is an action of assumpsit to recover damages for the alleged breach of a contract of employment. The case was heard by a superior court justice on an agreed statement of facts and resulted in a decision for the defendant. The case is here on the plaintiff's single exception to such decision.

The plaintiff's declaration, which is in three counts, was twice amended, and to the second amended declaration de-

fendant filed six pleas to each count. The first plea sets out the general issue; the second and third pleas allege substantially that the contract between plaintiff and defendant was invalid in that it was for a term in excess of the unexpired term of the defendant commission, hereinafter sometimes called the commission; and the fourth, fifth and sixth pleas attack the validity of the contract on the ground that plaintiff was a member of the commission at the time the contract was executed.

The plaintiff demurred to all pleas except that of the general issue and after a hearing the demurrers were overruled. Thereafter the case was heard on an agreed statement of facts.

Although plaintiff has briefed and argued an exception to the overruling of his demurrers, no such exception is contained in his bill of exceptions and therefore will not be considered.

It was agreed between the parties that, by the enactment of public laws 1937, chapter 2536, there was created a Jamestown bridge commission consisting of the five members who from time to time constituted the members of the town's committee; that members of the commission served for staggered terms of five years; and that until April 1951 plaintiff was a member of the commission. The parties further agreed that effective as of March 1, 1949 the commission by a unanimous vote of three, one member being absent and plaintiff not participating, entered into a contract with plaintiff whereby the commission engaged him as general manager for a period of ten years at a specified salary, and he agreed to devote his full time and services to the position.

It appears that plaintiff served as general manager until May 27, 1953, on which date he was notified that the commission had terminated his employment, giving as its reason that counsel had advised it that the agreement of March 1, 1949 was invalid and of no force and effect.

The agreed statement of facts further discloses that on October 1, 1944 the commission had entered into a trust indenture with the Rhode Island Hospital Trust Company to secure bonds for the financing of the construction and maintenance of the Jamestown bridge; that section 3 of article XI thereof provides, "The Commission further covenants and agrees that so long as any of the refunding bonds are outstanding it will continue to employ a General Manager of the bridge, of suitable experience and ability, and no person shall be employed as General Manager of the bridge except with the written consent of the original purchasers from the Commission of the refunding bonds issued under the provisions of this Indenture, filed with the Commission and with the Trustee, and no General Manager of the bridge shall be removed until the Commission shall have employed another General Manager with such consent"; and that the bondholders gave no approval of plaintiff's discharge nor of the declaration that his contract of employment was invalid.

The parties have further stipulated that the contract of employment as general manager was negotiated pursuant to the provisions of P. L. 1937, chap. 2536, sec. 3. The pertinent portion thereof reads as follows, "The commission shall make necessary rules and regulations for its government, and shall have power and authority to make and enter into all contracts and agreements necessary or incidental to the performance of its duties and the execution of its powers under this act, and to employ engineering, architectural and construction experts and inspectors and attorneys, and such other employees as may be necessary in its judgment, and fix their compensation."

It is part of plaintiff's case and defendant concedes that this section was amended by P. L. 1951, chap. 2820. The amendment is a re-enactment of the language quoted, except that after the phrase "fix their compensation" a comma was substituted for the period and the following language

354

added, "and enter into retirement contracts with the said employees under contract of the manager with approval of the commission, all of which contracts are hereby made valid."

On the foregoing state of the record and the analysis of the applicable statutes, the trial justice found that the Jamestown bridge commission was a public corporation, an agency of the state performing a governmental function, and she held that the contract between plaintiff and defendant, being for a term in excess of the unexpired terms of the commission members, was against public policy and void. The trial justice in support of the decision cited *Parent* v. *Woonsocket Housing Authority*, 87 R. I. 444, 143 A.2d 146, and 10 McQuillin, Municipal Corporations (3d ed.), §29.101, p. 413; also *Opinion to the Governor*, 58 R. I. 486, 491, and *Powers ex rel. Foley* v. *Caswell*, 79 R. I. 188, 195.

The trial justice further found that the nature of the relationship between plaintiff as commissioner and in his capacity as general manager of the commission's enterprise, resulted in a conflict of interest, which, as to the execution of the contract between the parties, was not resolved by the simple expedient of his refraining from participating in the vote of the commission.

We are of the opinion that the trial justice did not err in holding that, by reason of the political status of the commission and the nature of plaintiff's duties over which it exercised supervision, the contract on which plaintiff brings his suit was subject to the rule laid down by this court in *Parent* v. *Woonsocket Housing Authority, supra.* In that case we held that a contract between an agency exercising governmental functions and an attorney over whom the agency has supervisory powers is in itself an exercise of a governmental function and invalid as against public policy, if the term of employment is in excess of the unexpired terms of the agency members.

The plaintiff contends, however, that the language of P. L. 1937, chap. 2536, sec. 3, is so broad as to have authorized the contract between him and the defendant ab initio. We find no merit in this contention. An analysis of the section as originally enacted reposes in the commission no greater right to contract than that ordinarily conferred upon a body corporate essential to the exercise of its normal duties and responsibilities. Nothing therein contained suggests that the legislature intended to confer wider latitude than that commonly granted for similar purposes.

It is further argued, however, that if the grant of contractual authority is not so comprehensive as that for which plaintiff contends, nevertheless the amendment of the pertinent section by P. L. 1951, chap. 2820, constituted a legislative validation of plaintiff's contract with the commission. This argument rests on the proposition that a declaration of public policy by the legislature is dispositive of that issue when considering the legality of a contract subject to the test of the common law as laid down in *Parent* v. *Woonsocket Housing Authority, supra,* and in support thereof plaintiff cites *Davis* v. *Commonwealth,* 164 Mass. 241.

It is not necessary to recite the travel of that case beyond observing that the contract between Davis and the Commonwealth of Massachusetts was attacked on the ground, as in the instant case, that the agreement was against public policy. The Massachusetts court, addressing itself to that contention, stated at page 242, "We cannot declare the contract made with the petitioner by the Governor and Council void as against public policy, because the Legislature has sanctioned it. Whether a similar contract between private individuals, in which the compensation to be paid is made contingent upon success, would be deemed at common law void as against good morals and public policy, we need not consider. The Legislature can determine for itself what public policy requires or permits to be done in the

prosecution in any form of claims of the Commonwealth against the United States."

We do not disagree with this principle, but it is not applicable in the case at bar unless it can be found that by the language it employed in the amendment of P. L. 1951 the legislature intended to change the common law in so far as it related to the right to contract originally vested in the commission. The plaintiff reasons that by re-enacting the original section and including in such re-enactment the following, "and enter into retirement contracts with the said employees under contract of the manager with approval of the commission, all of which contracts are hereby made valid" the legislature intended that the clause "all of which contracts are hereby made valid" referred not only to the execution of retirement contracts authorized in the immediate preceding clause, but constituted a specific ratification of all contracts made by the commission prior to the amendment and more particularly the contract of plaintiff.

He argues that if the legislature had intended to restrict the application of the validating clause to the making of retirement contracts, it could have done so in several ways which would have more clearly expressed such an intention. This argument presupposes that if the language of the act as amended does not clearly relate exclusively to contracts of retirement, it necessarily follows that it was intended to apply retroactively to the general contractual power of the commission.

The plaintiff further argues that since there is nothing in the agreed statement of facts to suggest that any retirement contract, so called, had been consummated at the time the amendment was adopted and that the validating clause employs the present tense in the passive voice of the verb to make, it was error to hold that such clause did not effectively ratify plaintiff's contract with defendant. In this regard it is pertinent to note that there is nothing in

the agreed statement of facts to show that at the time the amendment was enacted the legislature was aware of plaintiff's tenure under the terms of the contract on which he relies. In *Bloomfield* v. *Brown,* 67 R. I. 452, citing *State* v. *Shapiro,* 29 R. I. 133, and *Langlois* v. *Dunn Worsted Mills,* 25 R. I. 645, we held, "It will also be presumed that, in enacting a statute, the legislature did not intend to make any alteration in the common law, unless the language used naturally and necessarily leads to that conclusion * * *."

It is manifest that we should construe with equal reserve legislative language which, it is contended, ratified a contract otherwise void in that it is against public policy and of which contract there is no showing that the legislature had any knowledge. We have been unable to find any case, nor has any been called to our attention, where an act of the legislature has been held to ratify a contract of which the legislature had no knowledge.

It is pertinent to observe that contracts of employment and retirement by their very nature would most probably extend beyond the unexpired terms of the members of the commission. It is more reasonable to assume that the legislature, cognizant of the common-law prohibition on such agreements and the necessity of manifesting a positive intention to derogate from the common law in order that said contracts would not be rendered invalid thereby, for that purpose employed the clause on which plaintiff relies.

However, it is the position of plaintiff that, notwithstanding the foregoing conclusions, the contract between him and the commission was subject to the provisions contained in the trust indenture of October 1, 1944, specifically section 3 of article XI, previously quoted.

He contends that the execution of the indenture was an exercise of a proprietary function, since it related to the sale of bonds for the construction and maintenance of the bridge, and he cites several authorities to support this contention. Assuming without deciding that the trust agreement repre-

sents a proprietary and not a governmental function, the fact that it provides for the participation by the trustees in the selection and replacement of the general manager and that the trustees did in fact participate in and approve the contract in issue does not change the character of the agreement between plaintiff and defendant as to the issue of public policy.

It was not essential, as to the obligation of the commission toward the trustees on the engagement of a general manager, that the latter should be engaged for a term of years beyond the power of the commission to contract. In the exercise of a proprietary function the commission could not successfully vest itself with the power to contract repugnant to public policy in carrying out a governmental function.

Furthermore plaintiff argues that the defendant commission received the benefit of his services and each month requisitioned funds for the payment of his salary, which requisition was approved monthly by the bridge engineer and the trustees, in reliance whereon plaintiff surrendered his right to the private practice of law, and consequently the commission is now estopped to deny the validity of the agreement between the parties. This contention is likewise without merit.

In *Austin* v. *Coggeshall,* 12 R. I. 329, at page 332, we held, "It is well settled that a municipal corporation, when sued directly on a contract which it is incapable of making, cannot be estopped from taking advantage of its incapacity because the party suing has acted on the contract in good faith, supposing it to be legal, for the reason that any person who contracts with such a corporation, which is a creature of public law, is bound at his own peril to know the extent of its capacity." This doctrine was cited with approval in *McAleer* v. *Angell,* 19 R. I. 688.

In our opinion the contract being subject to the common-law rule that it is against public policy for a body politic

to exercise a governmental function which extends beyond the terms of the members, we deem it unnecessary to consider the further objection that the agreement was against public policy on the ground of conflict of interest.

The plaintiff's exception is overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*Charles A. Curran,* for plaintiff.

*Letts & Quinn, Andrew P. Quinn, Jerome B. Spunt,* for defendant.