## PROVIDENCE TEACHERS UNION

v.

## PROVIDENCE SCHOOL BOARD.

No. 95–375–Appeal.

Supreme Court of Rhode Island.

Dec. 17, 1996.

Robert S. Parker, Richard A. Skolnik, Providence, for Plaintiff.

Jeffrey W. Kasle, Richard G. Riendeau, Providence, for Defendant.

## OPINION

BOURCIER, Justice.

This matter came before the Court pursuant to our order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After reviewing the memoranda submitted by counsel and hearing arguments thereon, we conclude that cause has not been shown. We affirm the final judgment entered by the Superior Court.

The plaintiff, Providence Teachers Union, is the duly certified bargaining agent for the Providence school teaching personnel. The defendants are the Providence School Board and the city of Providence.

On January 11, 1993, after negotiations for a collective-bargaining agreement had been completed between the Providence School Board (the board) and representatives of the Providence Teachers Union (the union), the parties executed a collective-bargaining agreement captioned "Agreement" (the agreement). Upon its execution the agreement was then forwarded to the City Council of Providence (the council). It was referred to the council's committee on finance, and on March 18, 1993 that committee forwarded the agreement to the full council with its recommendation that the agreement be rejected. That recommendation was accepted, and the full council voted to reject the agreement that same day.

The agreement between the board and the union contained a parity clause that formed the initial point of dispute in this case.[1] In

---

1. That clause reads as follows:
    "For the period September 1, 1992 to August 31, 1993, any percentage increase in salaries and/or wages negotiated by any Union representing any Providence City and/or Providence School Department employee for said period

April 1993 the union filed a grievance alleging that the board had failed to calculate teacher salary increases in accordance with the agreement's parity clause. Arbitration followed, and a three person arbitration panel decided on December 16, 1994, that the board had violated the agreement's parity clause and directed the board to apply the parity formula in the manner provided by the agreement.

On December 22, 1994, following the arbitration panel's decision, the union then filed a Superior Court motion in the nature of a petition to confirm and enforce the arbitration award and requested an order confirming the award. The petition was assigned for hearing on January 17, 1995. Prior to the scheduled hearing, the city of Providence (the city) moved for leave to intervene, and was permitted to do so. At the scheduled arbitration award confirmation hearing both the city and the board objected to the union's petition to confirm the arbitration award. Additionally each moved to vacate the award on the ground that our decision in *Providence City Council v. Cianci*, 650 A.2d 499 (R.I.1994), was dispositive of the issue raised by the objections because the collective bargaining agreement had never been ratified by the city council.

At issue before the arbitration panel was the alleged violation of the parity clause in the collective bargaining agreement between the board and the union. However, as noted by the Superior Court trial justice, the issue raised by the defendants in the Superior Court was whether the agreement entered into between the union and the board was a valid agreement, absent ratification by the council.

The city and the board contend that the January 11, 1993 agreement required ratification by the council before it could become valid and effective. They point to Section 17–27 in the Providence Code of Ordinances and the decision reached by this court in *Cianci* as authority for their contention. That ordinance provides in part, "No collective bargaining agreement between the City of Providence and any labor organization shall become effective unless and until ratified by the Providence city council."

The union contends that the agreement did not require council ratification in order to be valid and binding. It argues that § 17–27 of the City Ordinances does not apply to the agreement at issue because the board was vested with the authority to negotiate, execute, and ratify contracts pursuant to G.L. 1956 §§ 28–9.3–2 and 28–9.3–4 as well as by our decision in *Exeter–West Greenwich Regional School District v. Exeter–West Greenwich Teachers' Association*, 489 A.2d 1010 (R.I.1985).

The trial justice, after hearing, concluded that our decision in *Cianci* was controlling, and denied the union's petition to confirm the arbitration award. He also vacated the award. We agree with the trial justice that *Cianci* was dispositive of the question before him and affirm his decision and the final judgment entered thereon.

In *Cianci* this Court held that the mayor of Providence did not have independent authority to enter into a valid and binding contract with a public employees' union on behalf of the city absent council ratification. *See Cianci*, 650 A.2d at 502. In that case the mayor had negotiated and signed a collective-bargaining agreement with a public employees' union and then refused to submit the contract to the council for its ratification. *Id.* at 500. The council pursuant to Section 17–27 of the Providence Code of Ordinances thereafter sought an order from the Superior

---

or any part thereof will be provided teachers in full for said period; and any percentage increase in salaries and/or wages awarded any Providence city and/or Providence School Department employee through arbitration for the period September 1, 1992, to August 31, 1993, or any part thereof will be provided teachers in full during the period September 1, 1993, to August 31, 1994 and will be used to recalculate the September 1, 1993 to August 31, 1994, Teachers' Basic Salary Schedule by adding said awarded percentage increase to the September 1, 1991, to August 31, 1992, 10 Step Teachers' Basic Salary Schedule prior to computing and adding the percentage increase negotiated herein this agreement for the September 1, 1993, to August 31, 1994, Teachers' Basic Salary Schedule. The September 1, 1994, to August 31, 1995, Teachers' Basic 10 Step Salary Schedule shall be recalculated in the same manner."

Court that would require the mayor to submit the agreement to the council for ratification. This Court decided that Section 17–27 was valid and enforceable and that the mayor was required to submit the agreement to the council for its prior ratification in order for the agreement to become valid and binding.

The mayor had asserted that pursuant to §§ 28–9.4–3 and 28–9.4–5 of the General Laws he possessed the independent authority to negotiate and to ratify collective-bargaining agreements for the City of Providence. We, however, drew a distinction between his authority to negotiate and the City Council's authority to ratify a contract and held that "neither § 28–9.4–3 nor § 28–9.4–5 addresse[d] any issue concerning ratification of municipal contracts." *Cianci*, 650 A.2d at 502. We concluded that the power of ratification remained in the city council. *Id.*

▪ In considering the issue before us, we agree with the trial justice. Sections 28–9.3–2 and 28–9.3–4, upon which the board relies, are not different from §§ 28–9.4–3 and 28–9.4–5, which we construed in *Cianci*. Those sections do not address the authority of ratification but rather discuss the authority of the board to negotiate collective-bargaining agreements. For this reason the mandate of § 17–27 of the Providence Code of Ordinances, which requires that all contracts be ratified by the council, is controlling. The union's reliance here on *Exeter–West Greenwich* fails to recognize the distinction that we drew in *Cianci* between negotiation of a contract and ratification of a negotiated contract, and is therefore misplaced.

Our conclusion that the board cannot create an enforceable municipal collective bargaining agreement without council ratification is supported by our review of P.L.1968, ch. 203, § 10, and the later adoption of the Providence Home Rule Charter by the voters of that city on November 4, 1980.[2] The 1968 legislation created the city's current system of fiscal management for its public school system. Public Laws 1968, ch. 203, § 10, reads in pertinent part as follows:

"Sec. 10. Annually at the time and in the manner provided by law for all city

departments, the school committee shall submit to the finance director of the city of Providence an itemized budget, including an itemized estimate of the anticipated revenue and the proposed expenditures necessary to meet the financial needs of the school department, including sums for the promotion of health of the school children for the ensuing fiscal year, together with such other supporting information as the finance director may direct.

"The finance director, under the supervision of the mayor, may revise the estimates as submitted by the school committee, and the mayor shall present to the city council his recommended budget for the operation of said school committee in the same manner as required by law for any other city department.

"The city council shall have the power and authority to act on the school budget in the same manner and to the same extent it may act on the budgets of other city departments, and the city council may appropriate funds to the school department in lump sum or in such detail as it deems necessary and appropriate. The total amount or amounts so appropriated to the school department shall include all revenues from whatever source derived, and the department of finance in said city of Providence shall be charged with the responsibility of insuring that no expenditures are made or obligations created by the school committee which are in excess of the amount or amounts so appropriated or of such amounts as they may be amended by the city council."

Some thirteen years, later when the Providence Home Rule Charter was adopted by the city's voters and later ratified by the General Assembly, the exact language from P.L.1968, ch. 203, § 10, had found its way into Section 707 of the Home Rule Charter and that section was later specifically ratified by the General Assembly. That history is significant to us because it evidences an intention in the city's Home Rule Charter to vest the city council with ultimate and final authority over municipal expenditures, including those of the school department. The

city's Home Rule Charter Sections 706 and 707 also recognize the council's ultimate authority. Section 706 provides:

## "706. Powers and duties.

The powers and duties of the school board shall be all those imposed on school boards by state law, and, without limitation, the following:

(a) To determine and control all policies affecting the administration, maintenance and operation of the public schools;

(b) To provide rules and regulations for the use, operation and maintenance of public school properties;

(c) To appoint a superintendent of schools to serve as the chief administrative agent of the school board;

(d) To establish the compensation for said superintendent;

(e) To appoint and remove all school department employees and fix their salaries within *limits established by appropriation of the city council for the school department.*" (Emphasis added.)

Section 707 then provides:

## "707. Budget

Annually at the time and in the manner provided in Article VIII, section 802 for all city departments, the school board shall submit to the finance director an itemized budget, including an itemized estimate of the anticipated revenue and proposed expenditures necessary to meet the financial needs of the school department, including sums for the promotion of health of the school children for the ensuing fiscal year, together with such other supporting information as the finance director may direct.

The finance director, under the supervision of the mayor, may revise the estimates as submitted by the school board, and the mayor shall present to the city council the recommended budget for the operation of said school board in the same manner as required by Article VIII, section 803 for any other city department.

The city council shall have the power and authority to act on the school budget in the same manner and to the same extent it may act on the budgets of other city departments, and the city council may appropriate funds to the school department in lump sum or in such detail as it deems necessary and appropriate. The total amount or amounts so appropriated to the school department shall include all revenues from whatever source derived, and the department of finance shall be charged with the responsibility of insuring that no expenditures are made or obligations created by the school board which are in excess of the amount or amounts so appropriated or of such amounts as may be amended by the city council."

Those Home Rule Charter sections, 706 and 707, clearly authorize the city's mayor and its city council to not only control, but also to monitor the school department's budget and expenditures. Pursuant to those Home Rule Charter sections, the city finance director, acting under the mayor's supervision is authorized to revise any budget appropriation requests submitted by the school board and to then submit those revised budget requests to the city council for its consideration and approval. The city council may then appropriate by ordinance, those amounts that it deems sufficient and necessary for the maintenance and operation of the city schools. That amount of appropriation may in the discretion of the city council be by a lump sum appropriation or by a detailed item designation appropriation. Thereafter the school board cannot expend moneys or create financial obligations that would be in excess of the amounts appropriated to the board by the city council. In that context, a collective bargaining contract, including therein provisions for school department salaries, that would create a greater financial obligation for the city than the city council might choose to fund, would clearly be in contravention to the council's expenditure controls embedded within Sections 706 and 707 of the city charter.

The pertinent statutes, the Providence Home Rule Charter, and our decided case law, taken together and read in the context of this appeal, compel us to conclude that as the ultimate arbiter of school expenditures, the council was vested with the final authority to ratify or to reject the contract negotiated by the board and the union. Our conclu-

**388**

sion is consistent with our decision in *Betz v. Paolino*, 605 A.2d 837, 839 (R.I.1992), where we said that "the citizens of the city of Providence specifically conferred the entire legislative power on the elected city council," and what we later said in *Cianci*, 650 A.2d at 502, that the power to control employee benefits and to ratify collective-bargaining agreements is endowed in the council in order to manage the budgetary affairs of the city.

In that light, we clearly recognized in the General Assembly's ratification of the Providence Home Rule Charter by P.L.1981, Ch. 37, support for our holdings in *Betz* and *Cianci.* It is important to note that not only were Sections 707 and 706 in the Providence Home Rule Charter specifically ratified in the Charter Ratification Act in 1981, but that Section 3 in the Ratification Act repealed all General Assembly acts and parts of acts pertaining to the city of Providence that were inconsistent with the Providence Home Rule Charter provisions.

Accordingly, if the union perceives of any conflict or inconsistency between §§ 28–9.3–2 and 28–9.3–4 enacted by the General Assembly in 1966 [3] and the Providence Home Rule Charter validated by the General Assembly in 1981, we believe that Section 3 in the 1981 Ratification Act [4] certainly trumps the earlier 1966 legislation insofar as §§ 28–9.3–2 and 28–9.3–4 have application to the city of Providence.

█ We conclude that the collective-bargaining agreement entered into by the board and union absent council ratification, is void and unenforceable, and the arbitration award construing that agreement must be vacated. The Providence Teachers Union's appeal is denied and dismissed, the judgment of the Superior Court is affirmed, and the papers in this case are remanded to that court.

**3.** P.L.1966, ch. 146, § 1.

**4.** P.L.1981, ch. 37.