**PROVIDENCE TEACHERS UNION**

v.

**PROVIDENCE SCHOOL BOARD.**

No. 95–445–Appeal.

Supreme Court of Rhode Island.

Feb. 10, 1997.

---

3. P.L.1966, ch. 146, § 1.

4. P.L.1981, ch. 37.

Richard A. Skolnick, for Plaintiff.

Joseph A. Rotella, New York City, for Defendant.

## OPINION

LEDERBERG, Justice.

The issue in this appeal is whether the collective-bargaining agreement (agreement or contract) entered into between the Providence Teachers Union (union) and the Providence School Board (board) for the school years 1992 through 1995 was valid and enforceable. The Superior Court ruled that the agreement was not valid and therefore vacated an arbitration award rendered pursuant to an arbitration clause in the agreement. The union appealed. The identical issue of the agreement's validity was raised in *Providence Teachers Union v. Providence*

*School Board,* 689 A.2d 384 (R.I., filed Dec. 17, 1996) (hereinafter *Providence Teachers I* ). In that case we held that the agreement was "void and unenforceable" because it had not been ratified by the Providence City Council (council). *Id.,* at 388. Our decision in *Providence Teachers I* controls the instant litigation on the issue of the validity of the agreement. In respect to the additional arguments that the union has raised, we affirm the judgment of the Superior Court.

### Facts and Procedural History

On January 11, 1993, the union and the board entered into a collective bargaining agreement for the three-year period from September 1, 1992, to August 31, 1995. The agreement was forwarded to the council, which rejected the agreement on March 18, 1993.

Subsequently, in response to a grievance filed by a Providence teacher, the union and the board submitted to arbitration the issue of whether the board had "failed to provide the grievant with a science classroom which was equipped to safety standards and equipment and supply standards sufficient to meet" the board's obligations under the agreement. A hearing was conducted on April 26, 1995. The school board apparently did not challenge the arbitration panel's authority to decide the issue. One month later, the arbitration panel issued a ruling that found that the agreement had been violated and ordered the board "to schedule the grievant into one (1) science classroom which is properly equipped and supplied, including safety features, as required by law, regulation and contract."

In a footnote, the arbitration panel noted that on May 16, 1995, the Superior Court, in a ruling in separate litigation that eventually led to our opinion in *Providence Teachers I,* had "declare[d] the contract not ratified by the City." The panel stated that it would nonetheless rule upon the grievance because

"1. The School Board and the Union have abided by the Contract, with the exception of the parity clause, since the tentative agreement of January 11, 1993.

"2. The School Board and the Union have voluntarily submitted this issue to arbitration.

"3. The finding and interim award are non-financial in nature and deal with a safety issue which is a paramount responsibility of government with or without a contract.

"4. The Union is appealing the Superior Court decision to the Rhode Island Supreme Court. Therefore, the panel submits its interim findings for action by the Board as an appropriate response to the existing state of affairs."

The union filed a petition to confirm and enforce the arbitration award in the Superior Court. The board objected and filed a motion to vacate the award on the basis of the Superior Court's determination in the *Providence Teachers I* litigation that the contract was void and unenforceable. In its motion, the board alleged for the first time that the arbitration panel lacked authority to issue the award. On July 27, 1995, the Superior Court issued an order that denied the union's petition to confirm the arbitration award and granted the board's petition to vacate the award.

### Validity of Agreement

 The union appealed the order vacating the arbitration award. While the instant appeal was pending, this Court, in *Providence Teachers I,* affirmed the Superior Court's ruling that the agreement was void and unenforceable because the council had failed to ratify it as required by § 17–27 of the Providence Code of Ordinances. We concluded in *Providence Teachers I* that

"[t]he pertinent statutes, the Providence Home Rule Charter, and our decided case law, taken together and read in the context of this appeal, compel us to conclude that as the ultimate arbiter of school expenditures, the council was vested with the final authority to ratify or to reject the contract negotiated by the board and the union." *Id.,* at 387.

The holding of *Providence Teachers I,* therefore, requires us to reject the union's claim that the agreement was valid and enforce-

able. Additional issues, however, have been raised in the instant case.

## Waiver and Estoppel

The union argued that the board waived any objection to the arbitration panel's authority by failing to object in a timely manner. In particular, the union maintained that G.L.1956 §§ 28–9–13 and 28–9–18(a)(3) placed upon the board an affirmative duty to object to the arbitration panel's authority before proceeding with arbitration. Section 28–9–18 lists the statutory grounds for vacating an arbitration award rendered in a labor controversy. According to subsection (a)(3) of that section, the court must vacate an arbitration award "[i]f there was no valid submission or contract, and the objection has been raised under the conditions set forth in § 28–9–13."

Section 28–9–13 establishes the grounds for attacking the validity of arbitration not conducted pursuant to judicial order. Subsection (1) of § 28–9–13 provides that a party that has participated in an arbitration proceeding may object to the confirmation of an award on specified grounds, "provided that he or she did not continue with the arbitration with notice of the facts or defects upon which his or her objection is based." According to the union, the board's failure to object to the arbitration panel's authority until after an award was rendered, even though the board had known all along of the council's failure to ratify the contract, resulted in a waiver of this claim.

■ We are constrained to point out, however, that when the council rejected the agreement, the board thereafter had no authority, real or apparent, to submit disputes arising from the rejected contract to arbitration. The union proceeded under a theory of apparent authority to argue that the city was bound by the board's submission of the dispute to arbitration even if the agreement was

void. This Court has squarely rejected the proposition that a municipality may be bound by the actions of an agent without actual authority. *Warwick Teachers' Union v. Warwick School Committee*, 624 A.2d 849, 851 (R.I.1993). Moreover, in this case any reliance by the union on the "apparent" authority of the school board was unreasonable in light of the council's explicit rejection of the contract. Finally, subsection (2) of § 28–9–13 requires that a party that did not participate in arbitration proceedings, in this case the City of Providence (city) or a duly authorized agent, may be barred from contesting the validity of an agreement to arbitrate only if that party had been "served with an application to compel arbitration under § 28–9–5" or "[i]f a notice [of intention to arbitrate] shall have been personally served upon the party" as required under § 28–9–13(2).[1] Because it is undisputed that the city was not served with such notice, the city cannot be bound by the board's submission of a dispute pursuant to an arbitration clause in an unratified contract.

■ The union also argued that the board and the city should be equitably estopped from denying the validity of the contract. The union noted that the teachers and the school board relied on the validity of the agreement for two and a half years and that the board stipulated in the *Providence Teachers I* litigation that the parties had "at all times utilized and applied the current agreement (the 1992–95 Collective Bargaining Agreement) in all respects" except for the parity clause at issue in that case. The indispensable elements of equitable estoppel, or estoppel *in pais,* are:

> "first, an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and secondly, that

---

1. The union suggests that the city, by failing to intervene in the instant matter, has waived its right to contest arbitrability under G.L.1956 § 28–9–13(2). This section, however, does not apply to a party who has not been notified pursuant to its provisions. Moreover, under our holding in *Vieira v. Jamestown Bridge Commission,* 91

R.I. 350, 358, 163 A.2d 18, 23 (1960), the board could not be estopped from arguing its own incapacity to make the contract. We note finally that the city did intervene in *Providence Teachers Union v. Providence School Board,* 689 A.2d 384 (R.I.1996), and successfully challenged the validity and enforceability of the contract.

such representation or conduct in fact did induce the other to act or fail to act to his injury." *Lichtenstein v. Parness*, 81 R.I. 135, 138, 99 A.2d 3, 5 (1953).

In the instant case, the city made no affirmative representation in respect to the contract's validity on which the union might reasonably have relied. As noted *ante*, the council expressly rejected the contract, and that rejection was a matter of public record. Therefore, the union was not permitted to rely on any representation of the board concerning the contract's validity because the board lacked the capacity to enter into a binding contract without council ratification. *See Vieira v. Jamestown Bridge Commission*, 91 R.I. 350, 358, 163 A.2d 18, 23 (1960) (party contracting with municipal corporation bound at its peril to know extent of corporation's capacity). For these reasons, the union's estoppel argument must fail.

### Pre-existing Duty of Safety

The union also argued that a municipal corporation has a duty to its employees independent of a contract "to see that appliances furnished by it to the employees' use and safety and that places designated by it in which employees are to work are reasonably safe." *See* 56 Am.Jur.2d *Municipal Corporations* § 289 at 337 (1971). We refrain, however, from considering the extent of a municipal employer's obligation to provide reasonably safe working conditions for its employees in this case because the issue here centers on contractual validity. The union has attempted to bind the city to arbitration conducted pursuant to a void and unenforceable contract. Irrespective of whether a municipality owes its employees a duty of safety encompassing the grievance in this case, the union had no enforceable contractual right to compel the city to arbitrate safety disputes, and the board had no authority under the void contract to submit to such arbitration.

Finally, the union contended that the provisions in the agreement on which the grievance was based were identical to provisions in prior collective-bargaining agreements that the council *did* ratify. According to the union, if there is no present valid contract, then the last valid contract is operative and controls the relationship between the parties. Because both the arbitration clause and the provisions allegedly violated in the present agreement were taken from the preceding agreement that was ratified by the council, the duties of safety and arbitration imposed by those provisions, according to the union, remained operative in the absence of a new agreement.

Although we have not been furnished a copy of the 1991–1992 agreement, it appears from the record that the arbitration and safety provisions in the 1992–1995 agreement were taken verbatim from the earlier agreement. Article 17 of the 1992–1995 agreement provided a five-step grievance procedure ending in arbitration. A grievance was defined, in part, as "a complaint or claim by a teacher or the Union filed with or by the Union that an event or condition exists which represents a violation, inequitable application, [or] misinterpretation of this Agreement." The agreement further provided in article 20 that "[t]he Board and the Union agree that *during the life of this Agreement* any and all disputes arising between them shall be settled in accordance with the grievance procedure of this Agreement." (Emphasis added.) Nothing in the agreement revealed a contractual intent to extend the viability of the arbitration clause beyond the life of the contract. The agreement did not provide for continuation of its terms in the absence of a new agreement. At oral argument, the union stated that the union and the board had reached a provisional agreement that would control during their present contract dispute. Assuming, *arguendo*, that the board had agreed that the arbitration provisions from the 1991–1992 agreement would continue to be binding, under our holding in *Providence Teachers I* such an agreement would have required ratification by the council. There is no indication in the record that the council ever ratified such an agreement.

Moreover, we reject the proposition that a general arbitration clause in an expired contract represents a valid mechanism for resolving a dispute that neither arose during the term of the contract nor involved a right that accrued or vested under the

contract.[2] Courts addressing similar issues, including the United States Supreme Court, have typically held that arbitration may be compelled after termination of a contract if the dispute itself arose prior to termination or if the dispute was "over an obligation arguably created by the expired agreement." *Nolde Brothers, Inc. v. Bakery & Confectionery Workers Union*, 430 U.S. 243, 251–52, 97 S.Ct. 1067, 1071–72, 51 L.Ed.2d 300, 308–09 (1977); *see also Diamond Glass Corp. v. Glass Warehouse Workers and Paint Handlers Local Union*, 682 F.2d 301, 304 (2d Cir.1982) (grievance not arbitrable where contract expired and union did not demonstrate that dispute related "to the period of, or to rights arising under, the expired contract"). In general, a postexpiration grievance may be said to arise under an expired contract, and thus be subject to a duty to arbitrate under an arbitration clause in the contract, "only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Litton Financial Printing Division v. NLRB*, 501 U.S. 190, 206, 111 S.Ct. 2215, 2225, 115 L.Ed.2d 177, 196–97 (1991); *see also* 48A Am.Jur.2d *Labor and Labor Relations* § 3372 (1994); B.C. Ricketts, Annotation, *Enforcement of Contractual Arbitration Clause as Affected by Expiration of Contract Prior to Demand for Arbitration*, 5 A.L.R.3d 1008 (1966 and 1996 Supp.).

There is no basis, however, and the union has cited none, for the proposition that arbitration may be compelled pursuant to a general arbitration clause in an expired contract in the event, as here, that the dispute arose after expiration of the contract and did not involve a right that accrued or vested under the expired contract. Such an expansive interpretation of an arbitration clause would, in our opinion, unduly augment the scope and the duration of the parties' contractual agreement to arbitrate. *See United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417 (1960) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"). We therefore conclude that the arbitration clause in the parties' prior agreement, which the council did ratify, did not grant the union power to compel arbitration of the present dispute.

Consequently, we deny and dismiss the union's appeal and affirm the judgment of the Superior Court, to which we return the papers in this case.

---

**2.** The contractual rights concerning safety, equipment, and supplies on which the union's grievance was based cannot be said to have "accrued" or "vested" under the expired 1991–1992 contract. "[A]n expired contract has by its own terms released all its parties from their respective contractual obligations, except obligations already fixed under the contract but as yet unsatisfied." *Litton Financial Printing Division v.* *NLRB*, 501 U.S. 190, 206, 111 S.Ct. 2215, 2225, 115 L.Ed.2d 177, 197 (1991). Although terms and conditions of employment may be insulated from postexpiration unilateral change in order to protect the statutory right to bargain, *see* G.L. 1956 §§ 28–9.3–2 and 28–9.3–4, such terms and conditions no longer have force by reason of the expired contract. *Litton*, 501 U.S. at 206, 111 S.Ct. at 2225, 115 L.Ed.2d at 197.