Spencer POTTER

v.

Mary CRAWFORD, in her capacity as Treasurer of the Town of Jamestown.

No. 2001–94–APPEAL.

Supreme Court of Rhode Island.

May 24, 2002.

Kenneth R. Tremblay, Portsmouth, for plaintiff.

Herbert F. DeSimone, Jr., Providence, for defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

In this case alleging the taking of riparian rights, Spencer Potter (the plaintiff) appeals from the entry of summary judgment in favor of the defendant, Mary Crawford, in her capacity as treasurer of the Town of Jamestown (the town). After reviewing the record of the summary judgment before us, we conclude from our *de novo* review [1] that the trial justice did not err in granting the town's motion.

The following facts essentially are undisputed. In 1992, the town sought permission to make repairs to its West Ferry Wharf in Jamestown (the project) from the Coastal Resources Management Council (CRMC). The town property abutted the plaintiff's property and, in October 1992, the plaintiff objected to the proposed construction project, asserting that it infringed upon his riparian rights. The CRMC continued the matter pending a determination of the validity of the plaintiff's assertion.

Meanwhile, the chairman of the Jamestown Harbor Management Commission (JHMC), Donald Armington (Armington) approached the plaintiff to discuss the plaintiff's objections to the proposed project. After meeting twice with the plaintiff, Armington wrote to the plaintiff confirming that "you indicated that you would give your consent to proceeding with the * * * Project as long as your riparian rights are protected and certain considerations are met by written agreement with the Town." One of those "considerations" was the plaintiff's request for a free outhaul space at the town's West Ferry Wharf.[2] Later, the CRMC was informed that the riparian rights conflict between the plaintiff and the town had been resolved and it granted the town's project application on October 27, 1992.

In June 1993, the plaintiff reduced the oral agreement to writing in the form of a lease between lessor and lessee, and sent it to Armington for approval. Armington faxed the proposed agreement back to the plaintiff together with a cover sheet stating:

"Document OK, except that it must be an agreement (not lease) between riparian owner and town * * * Also, owner and town (not JHMC) must agree."

Meanwhile, some residents expressed their objection to the agreement at a JHMC meeting. Subsequently, on February 24, 1994, the town notified the plaintiff that it would not sign the proposed agreement. The plaintiff then filed the instant action seeking specific performance of the agreement and the removal of the pilings, steel cables and stone fill that the town had

1. *See Marr Scaffolding Co. v. Fairground Forms, Inc.*, 682 A.2d 455, 457 (R.I.1996).

2. The town rents outhaul spaces on its wharf from which boats can be launched and taken

out of the water for repair, storage etc. The plaintiff asserts that Armington agreed, on behalf of the town, to provide him with a rent-free outhaul space.

placed over waters within his riparian boundaries.

The town later filed a motion for summary judgment, contending that Armington lacked both actual and apparent authority to bind the town to the oral agreement. It additionally asserted that the plaintiff would be unable to prove interference with his riparian rights because, in his deposition testimony, he admitted that the wharf did not interfere with his ability to navigate the waters in front of his property. He also stated that his shoreline actually benefited from the construction. The plaintiff countered by averring that although he never specifically had been told that Armington had the authority to contract on behalf of the town, Armington appeared to have such authority and the town should be estopped from so denying. In addition, the plaintiff contended that there were genuine issues of material fact about whether the town had infringed upon his riparian rights.

After a Superior Court hearing justice reviewed the parties' arguments and their accompanying memoranda, he granted the town's motion. He found that Armington neither had actual authority nor apparent authority to bind the town and that because the plaintiff agreed to the project, he could not now object to its implementation. The plaintiff timely appealed.

After a pre-briefing conference, the parties were ordered to appear and show cause why the issue raised in this appeal should not be summarily decided. They did appear, but failed to show cause. Accordingly, we proceed to summarily decide the plaintiff's appeal.

■ The plaintiff first contends that Armington had apparent authority to bind the town through his oral agreement with the plaintiff. We reject the plaintiff's assertion that a municipality may be bound by the actions of a public agent who possesses only the apparent authority to do so. That is because "the authority of a public agent to bind a municipality must be actual * * *." *Casa DiMario, Inc. v. Richardson*, 763 A.2d 607, 610 (R.I.2000) (quoting *Warwick Teachers' Union Local No. 915 v. Warwick School Committee*, 624 A.2d 849, 850–51 (R.I.1993)). "Consequently, any representations made by such an agent lacking actual authority are not binding on the municipality * * *." *Casa DiMario, Inc.*, 763 A.2d at 610 (quoting *School Committee of Providence v. Board of Regents for Education*, 429 A.2d 1297, 1302 (R.I.1981)).

The undisputed evidence demonstrates that Armington did not possess actual authority to bind the town to an agreement with the plaintiff. Not only does the Jamestown Code of Ordinances specifically limit Armington's powers as chair of the JHMC to "calling and conducting all meetings of the commission[,]" but Armington himself also informed the plaintiff that the agreement must be with the town, not JHMC.

■ The plaintiff's assertion that the town should be estopped from denying that Armington and the JHMC had the authority to enter into an agreement with him, likewise, must fail. That is because "[e]stoppel against a [public entity] * * * must be predicated upon the acts or conduct of its officers, agents or official bodies acting within the scope of their authority." *Romano v. Retirement Bd. of the Employees' Retirement System of Rhode Island*, 767 A.2d 35, 42 (R.I.2001) (quoting *Ferrelli v. Department of Employment Security*, 106 R.I. 588, 592–93, 261 A.2d 906, 909 (R.I.1970)). "[A]ny party dealing with a municipality 'is bound at his own peril to know the extent of its capacity.'" *Casa DiMario, Inc.*, 763 A.2d at 612 (quoting

*Vieira v. Jamestown Bridge Commission,* 91 R.I. 350, 358, 163 A.2d 18, 23 (1960)). "[A] person's failure to discover the true scope of a government agent's actual authority will not provide any grounds to relieve that person's detrimental reliance upon the agent's representations or actions." *Romano,* 767 A.2d at 43. *See also* 12 *Williston on Contracts* § 35:63 at 509 (1999).

As previously stated, Armington did not have actual authority to enter into an agreement with the plaintiff; therefore, he was not acting within the scope of his authority when he made said agreement. Consequently, the fact that the plaintiff merely assumed that Armington possessed such authority will not provide him with any grounds for relief under an estoppel theory against the town.

▮ The next issue we must address is whether the town's construction project infringed upon the plaintiff's riparian rights. The trial justice denied this claim, finding that by assenting to the project before reaching an agreement with the town, the plaintiff was bound by that assent and could not now complain. The plaintiff asserts that his assent was predicated upon his agreement with Armington and should not be considered as a basis for denying him his riparian rights. Because we conclude that the plaintiff has not been deprived of his riparian rights, we need not address whether the plaintiff was bound by his assent.[3]

▮ Under the riparian rights doctrine, "a riparian land owner possesses a common-law right to wharf out." *Town of Warren v. Thornton–Whitehouse,* 740 A.2d 1255, 1260 (R.I.1999). As noted and defined in *Clark v. Peckham,* 10 R.I. 35, 38 (1871), "while the shore itself, and the space between the high and low water mark is public for passage, the riparian owner has a right of access to the great highway of nations of which he cannot be deprived." Specifically, "the riparian land owner has the right to construct whatever wharf or dock is necessary to gain access to navigable waters, [—'the great highway of nations'—] as long as such construction does not interfere with navigation or the rights of other riparian land owners." *Thornton–Whitehouse,* 740 A.2d at 1260. The plaintiff asserts, and the town concedes, that the town infringed upon his "riparian boundaries." However, the record reveals that he presented no evidence to indicate that his ability to wharf out or to navigate the waters in front of his property thereby had been affected. Indeed, in his deposition testimony, the plaintiff admitted that his ability to navigate in or around his shoreline had not been obstructed by the town's project, and at no point in this case has he suggested that his ability to wharf out has been affected. Consequently, we conclude that even if his "riparian boundary" had been infringed upon, there was no showing that his "riparian rights" in fact had been adversely affected despite that infringement.

For the foregoing reasons, the plaintiff's appeal is denied and dismissed. The papers in this case are remanded to the Superior Court.

---

**3.** *See Allstate Insurance Co. v. Lombardi,* 773 A.2d 864, 877 (R.I.2001) (noting that "[t]his Court certainly has the prerogative to affirm a decision made by a trial justice on grounds different from those relied upon by the trial justice").