[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter came on for trial before the Court, jury waived, in December of 2004. The parties disputed the ownership of two separate parcels of real estate on Block Island in New Shoreham, Rhode Island. The Town of New Shoreham Tax Assessor identifies these parcels as Assessor's Plat 11, Lots 54 and 56. A 1988 deed to Dr. and Mrs. John C. Britz (Britz-Bakers)[1] identifies a lot 5 as Parcel 1, but does not clearly reference Lot 54.
Defendants Estate of Edward S. Payne, Estate of John Payne, their Heirs, Harriet Phelan, Doris W. Payne, Frank C. Payne, Jr. Trust, Cathy Payne, Clifton Payne, and Carol Payne as Trustees of the Frank Payne Trust ("the Paynes") are members of one family who trace their lineage to the original settlers of Block Island.
The Britz-Bakers instituted the within action against the Paynes and the Town of New Shoreham to quiet title to both parcels. The Paynes answered and filed a two-part counterclaim, seeking to quiet title in their favor and alleging slander of title. New Shoreham filed a counterclaim with its answer, asserting ownership of Lot 54. This Court will treat New Shoreham's action as a crossclaim against the Paynes.
Only the Paynes and Britz-Bakers asserted ownership interests in Lot 56, also described as Parcel 1. The Paynes and Britz-Bakers reached an accord on the third day of trial, resolving any controversy concerning Parcel 1, and removing all claims of Britz-Bakers. After withdrawal of the Britz-Bakers, only the ownership of Lot 54, remained in dispute. Litigation continued between New Shoreham and the Paynes.
 Findings of Fact
The disputed parcel encompasses approximately 10,500 square feet and is situated between Lakeside Drive and Fresh Pond on Block Island. The Town of New Shoreham cannot locate a deed or any other document which conveys this lot to the Town. In fact, no party was able to locate a deed to the Town.
The Paynes are also unable to present a deed establishing their ownership of the lot. However, they trace their ownership to the original founders of the Island. Block Island was settled by dividing various strips of land among proprietors in 1661. Proprietors apportioned the parcels by drawing lots by some agreed lottery system. The Paynes claim their ownership as an ancestor, Captain James Sands, who was a proprietor, received a large tract of property which includes this parcel. The parties agree that the Paynes are direct descendants of Captain Sands. They do not agree, or even dispute, that there may be other descendants. Neither of the parties could locate a deed or other instrument of conveyance from Captain Sands or his descendants for the disputed parcel.
There are three versions of the proprietors' map. One is recorded in Book 1, Page 1, of the New Shoreham Registry of Deeds. Title searchers consider this as the root of all title in New Shoreham. However, to ascertain the proprietors' ownership, this map must be read in concert with the map at Book 1, Page 313, Maps of the Rhode Island Historical Society and Recorded Minutes of the Town of New Shoreham. Fresh Pond is not clearly displayed on these maps.
The Town Counsel's records reflect that in 1913, Frank Payne leased from the Town, a parcel between Fresh Pond and the highway. This parcel was about one-half of an acre. The Town's financial records show that rent was received from Mr. Payne "for ice house at Fresh Pond."
Prior to the 1980s the Town of New Shoreham did not have a complete set of tax assessor's maps for all property on the island-town. The first time that Plat 11, Lot 54 appeared on the Town records was for the Town's assessment of December 31, 1990, when the Town assessed the lot to the Estate of Frank C. Payne. No bills were sent or taxes paid until 1999 (for the December 31, 1998 assessment). Since then the Paynes have paid the taxes on this lot to the Town.
The use of the parcel has been varied, but Ms. Baker established that members of the Payne family and their guests swam from the lot after 1989.
 Discussion
The parties proffered a variety of arguments. The Town failed to present either a surveyor or engineer. While the Town's title attorney was highly qualified, the Town's proof was incomplete. The Town claimed that some of the 17th century maps displayed roads. While the various proprietors' lots on the north end of the island may front on what is now Corn Neck Road, the Town did not establish the location of the roads on the southern part of the Island where the disputed parcel is located. Without a surveyor or engineer, the Town could not establish whether the western land on Captain Sands' parcel bordered on the Town road or was near the Town road. At best, the ancient maps may show that a public road existed near the area, Almy v. Church, 18 R.I. 189 (R.I. 1893). The Court cannot conclude where the road was or that a road was the boundary of the parcel.
The Town also relies on a sketch contained in tube 43 of the New Shoreham records which separately depicts the location of the Town road. The Paynes' engineer, Mr. Boyer, testified at length and warned against relying on this sketch as it was incomplete, not designed to show ownership, and he was unsure what the intended use for the sketch was. He concluded that it was not a survey, not dated, and not even titled. He also testified that it was not a document that a surveyor could rely on. Although remnants of a foundation now remain on the parcel, the Town never established that the foundation was for the same "ice house" described in the vague Town Council minutes. As Attorney Whalen stated, this foundation "could have been anything." Perhaps Mr. Payne simply paid the lease amount to avoid protracted litigation on the mainland. No written lease was ever produced.
Throughout the trial, the title attorneys testified that they were not surveyors, but often depended on landmarks. Several indicated that they traveled to the site to put the property descriptions in perspective. Viewing ancient maps and odd sketches heightened this confusion.[2]
The only surveyor who testified was Mark Boyer. Mr. Boyer, called by the Paynes, attempted to locate the disputed parcels on the 17th
century maps. Describing his surveying practice (which deals extensively with parcels described in ancient records), his methodology and using aerial photographs and map overlays, he concluded that Lot 54, the disputed parcel, was a part of the Sands' property on the ancient maps. He criticized the use of the sketch found in Tube 43 in the New Shoreham vault, claiming it was not intended to show property lines. Mr. Boyer described his familiarity with ancient mapping, surveying, and surveying ancient parcels. His testimony was conclusive, instructive, educated, credible and straightforward.
The Town of New Shoreham was left to dispute the title to this small parcel. With the 17th century maps and the Payne family lineage, the Paynes established a chain of title. There was no conveyance to the Town or any use by the Town. The Court is left to question the Town's intent. The Town has billed the Paynes for the taxes on this lot and has enjoyed the payments received from the Payne family. Moreover, the Town never platted its lots for tax assessment purposes. Rhode Island has authorized communities to assess property taxes for over a century. R.I.G.L. § 44-5-1. The Town could have avoided much of the confusion by platting its assessor's maps earlier. Moreover, the Town has not demonstrated how it would use the property in any way. The estoppel doctrine may be "applied to a governmental authority when the equities are clearly balanced in favor of the party seeking relief under the doctrine and when compelling evidence warrants the doctrine's application." Fleet Construction Co. v.Town of North Smithfield, 713 A.2d 1241, 1244 (R.I. 1988) citing Greenwich Bay Yacht Basin Associates v. Brown, 537 A.2d 988, 991-92
(R.I. 1988). See Providence Teachers Union v. Providence School Board,689 A.2d 388, 391-92 (R.I. 1997). After taxing, New Shoreham is estopped from claiming ownership over the Paynes.
Finally, the Town relies on references in adjacent properties to support its claim of ownership. These descriptions are not in the title for the subject parcel and not in the chain of title. Mr. Boyer warned against relying on vague, disparate references in deeds for other parcels.
In his treatise The Law of Real Property, 1962, Professor Cornelius J. Moynihan explained ancient and modern conveyancing of real estate. He noted the importance of seisen, which looks to use and actual possession of the realty:
 Prior to the seventeenth century, the typical form of conveyance of a present freehold estate in land was the feoffment with livery of seisin. A feoffment was the grant of fief or feudal tenement and livery of seisin was the means by which the grant was effected . . .
 Until the enactment of the Statute of Frauds in 1677, no writing was necessary to make the feoffment valid. The estate conveyed passed to feoffee solely by viture of the transfer of the seisin. Moynihan, pp. 163-164.
In the case at bar, the Town of New Shoreham was unable to establish clear legal title. As the Paynes are successors to Captain Sands, Captain Sands was the prior owner, and no conveyance from Captain Sands or his heirs was ever demonstrated. The Paynes continue to hold legal title. Moreover, the Paynes have established a long term use of the property. Not only do the younger Paynes bathe in the Fresh Pond today, but the family has been there nearby for over 300 years. They operated a farm on a large tract for many years and presume that this lot assisted them in supplying fresh water.
In sum, the Court concludes that the Paynes own the disputed lot 54, and finds that the Town of New Shoreham has no interest in the real estate.
 Conclusion
For the reasons stated, the Court awards judgment for the Paynes against the Town of New Shoreham with respect to the crossclaim (incorrectly labeled a counterclaim) attached to the Town's answer of February, 15, 2002.
This matter shall be scheduled for a status conference to determine the resolution of the remaining issues. This conference is set for March 3, 2005 at 9:00 a.m.
[1] Dr. and Mrs. Britz were divorced in 1999 but each remains as a Plaintiff. Ms. Britz is now known as Margaret Baker. For convenience, they will be referenced herein as the "Britz-Bakers."
[2] For example, the Town's title attorney testified, guardedly, regarding a 1661 boundary "I believe it to be a road." Without certainty in the field of surveying and without historical knowledge, his speculative conclusion must be discounted.