Picard, et al. v. Providence, et al.  CV-98-095-M    09/30/99

UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

Lionel Picard, et al.,
      Plaintiffs
                                        R.I. Civil No. 98-40L
      v.                                N.H. Civil No. 98-95-M

City of Providence, et al.,
      Defendants


O R D E R


Plaintiffs bring this action against the City of Providence, Rhode Island, various municipal employees, and elected officials, asserting that defendants wrongfully deprived them of certain cost-of-living benefits to which they were entitled under the terms of a consent decree and collective bargaining agreements. Pending before the court are several dispositive motions.


**Background**

Plaintiffs in these consolidated cases are members of two distinct groups. The first is comprised of approximately 60 former members of the Providence Fire Department, each of whom retired after January, 1994. The second is composed of approximately 70 former members of the Providence Police Department each of whom retired after January, 1994.

A.     The Consent Decree.

In December of 1991, the City and a group of firefighters and police officers executed a consent decree in a state court suit captioned City of Providence, et al. v. The Employee Retirement Board of Providence, No. 90-2119 (R.I. Superior Court).  That consent decree provided that:

> Effective January 1, 1994, all retired Class B employees [i.e., police and firefighters] of the City of Providence and all beneficiaries of such employees who retired on or after January 1, 1990 . . . shall on the first day of January receive a cost of living retirement adjustment, in addition to the retirement allowance, in an amount equal to six (6%) percent of the retirement allowance, compounded.  In each succeeding year thereafter during the month of January, the retirement allowance shall be increased an additional six (6%) percent of the retirement allowance, compounded, to be continued during the lifetime of said retirement employee or beneficiary.

Consent decree, section 17, para. 3.

B.     The Collective Bargaining Agreements.

After entering into the consent decree, the City and plaintiffs negotiated collective bargaining agreements that incorporated the enhanced retirement benefit provisions of the consent decree.  Plaintiff firefighters say that they are entitled to (but never received) enhanced retirement benefits under the terms of a collective bargaining agreement negotiated

2

with the City which they claim was in effect from 1992 through 1995.  Similarly, plaintiff police officers say that they are entitled to enhanced retirement benefits under the terms of a collective bargaining agreement negotiated with the City which they claim was in effect from 1993 through 1995.  Defendants, however, point out that neither referenced collective bargaining agreement was ratified by the Providence City Council.  Accordingly, they claim that those arguments never became binding on the City.

C.   Legislative Action of the City Council.

In January of 1994, the City Council passed (and the Mayor signed) Ordinance 1994-1, which terminated the six percent (6%) cost of living adjustment ("COLA") for Class B employees called for under the consent decree.  At the same time, the City Council passed Ordinance 1994-2, which provided additional benefits to retired employees or their beneficiaries, but did not reinstate the full six percent (6%) COLA.

In January of 1995, the City Council passed (and the Mayor signed) Ordinance 1995-17, which provided that the COLA for Class B employees would be returned to its pre-1991 level of three percent (3%), consistent with the original provisions of section

3

17 of the City's Home Rule Charter. Subsequently, section 17-197 of the Code of Ordinances, entitled "Cost of Living Adjustment," was amended twice. On each occasion, the amount of a retiree's benefits to which the three percent (3%) COLA would apply was reduced (it appears that the three percent (3%) COLA currently applies only to the first One Thousand Dollars ($1,000) of an individual's retirement allowance). See Exhibits E and F to document no. 39.

    D.   Other Relevant Litigation Involving or Affecting the Parties to this Action.

On November 12, 1998, in what appears to have been a state proceeding addressing related issues, the Providence Superior Court held that the consent decree (and, necessarily, its COLA provisions at issue here) applies only to those individuals who were retired as of the effective date of that agreement: December 18, 1991. Mansolillo v. The Employees Retirement Board of the City of Providence, No. 93-5277, 1998 WL 799129 at *5 (R.I. Super. Nov. 12, 1998) ("The plain meaning of [retired Class B employees] requires an interpretation to mean those who on that operative date, in fact, were . . . a retired Class B employee. Had the parties intended a more expansive meaning, . . . they could have and would have said "retired Class [B] employees and Class [B] employees who thereafter retire."). Thus, defendants

4

assert that none of the plaintiffs in this case (each of whom appears to have retired well after the effective date of the consent decree) is covered by the consent decree.

Not surprisingly, plaintiffs disagree. In their amended complaint, they present the following claims:

1.   Count 1 - By adopting various city ordinances
     that are at odds with the COLA provisions of
     the consent decree, defendants deprived
     plaintiffs of property without due process,
     in violation of the United States
     Constitution.

2.   Count 2 - By adopting various city ordinances
     that are at odds with provisions of the
     collective bargaining agreements, defendants
     deprived plaintiffs of property without due
     process, in violation of the United States
     Constitution.

3.   Count 3 - By adopting various city ordinances
     at odds with provisions of the collective
     bargaining agreements, defendants violated
     plaintiffs' due process rights under the
     Rhode Island Constitution.

4.   Count 4 - Defendants' conduct violated
     plaintiffs' federally protected rights to
     equal protection of the law.

5.   Count 5 - The 1995, 1996, and 1998 amendments
     to city ordinances are void insofar as they
     violate various provisions of both the United
     States Constitution and the Rhode Island
     Constitution.

6.   Count 6 - The 1995, 1996, and 1998 amendments
     to city ordinances violate the Contract
     Clause of the United States Constitution and

5

the Rhode Island Constitution insofar as they impair plaintiffs' contract rights under the collective bargaining agreements.

7. Count 7 - By reducing plaintiffs' claimed entitlement to receive six percent (6%) COLA's under the collective bargaining agreements, defendants effected an unlawful taking of their property without just compensation.

See generally, Amended Complaints (documents no. 22 and 23).

In short, plaintiffs appear to be proceeding on two fronts. First, they challenge defendants' efforts to reduce the amount of COLAs to which plaintiffs claim they are entitled under the consent decree. Next, they challenge defendants' efforts to provide COLAs that are less than those called for under the terms of the collective bargaining agreements (which, as noted above, were never formally ratified by the City Council).

## Discussion

### I. Plaintiffs' Standing to Assert Rights Under the Consent Decree.

Based upon the Rhode Island Superior Court's opinion in Mansolillo, supra, it would appear that the question of the applicability of the consent decree to plaintiffs and those similarly situated Class B employees who retired after December 18, 1991, has been resolved: plaintiffs, all of whom retired in

6

or after 1994, are not beneficiaries of the consent decree's provisions. Thus, it would certainly appear that plaintiffs lack standing to challenge defendants' conduct, which arguably impaired rights acquired by the parties to that consent decree.

What remains somewhat unclear, however, is whether plaintiffs in this proceeding are bound by the holding in Mansolillo. They may, for example, be precluded from relitigating that issue by principles of res judicata or collateral estoppel. But, because the record fails to disclose whether plaintiffs were parties to Mansolillo, and because neither party has provided any developed argument on the applicability of the holding in that case, the court cannot determine whether plaintiffs are bound or not.

By failing to address the question of plaintiffs' standing to challenge the municipal ordinances which arguably affect their alleged rights under the consent decree, defendants might reasonably be viewed as tacitly acknowledging plaintiffs' standing. The record, however, fails to establish plaintiffs' standing. Accordingly, the court is disinclined to address the complex constitutional issues raised by the parties until it is

7

first satisfied that plaintiffs do have standing to pursue those claims.

The parties' cross motions for summary judgment as to Counts 1 and 5 (to the extent Count 5 relies upon the consent decree as the source of plaintiffs' claimed "property rights") are, therefore, denied without prejudice. Should defendants and/or plaintiffs elect to resubmit dispositive motions as to those counts, they should at least discuss standing, res judicata, and collateral estoppel. It might also be appropriate to discuss whether the "Rooker-Feldman" doctrine precludes the court from entertaining plaintiffs' apparent challenge to the decision in Mansolillo.[1]

---

[1] Federal courts, other than the Supreme Court, lack jurisdiction to directly review state court decisions. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923). Accordingly, district courts may not consider arguments or claims that are "inextricably intertwined" with a state court decision. Feldman, 460 U.S. at 476. Federal claims are inextricably intertwined with state court proceedings (even if precisely the same claims were not raised previously in state litigation) if the party had an opportunity to raise those claims and if resolution of the claims in federal court would effectively provide a form of federal appellate review of the state court's decision. See Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring); Lancellotti v. Fay, 909 F.2d 15, 17 (1st Cir. 1990). Once a state court issues a final judgment, a federal district court lacks jurisdiction to review that judgment, even if it is patently wrong or was entered following patently unconstitutional proceedings. Young v. Murphy, 90 F.3d 1225, 1231 (7th Cir. 1996).

II.  <u>Plaintiffs' Rights Under the Collective Bargaining
     Agreements</u>.

It is undisputed that the City Council did not formally
ratify the terms of the disputed collective bargaining
agreements.  <u>See, e.g.</u>, Plaintiff's motion for summary judgment
(document no. 48) at 9-16.  <u>See also</u> Firefighters' amended
complaint (document no. 22) at para. 76 ("The City Council for
the City of Providence has not approved the 1992-1995 Collective
Bargaining Agreement and/or the provisions referenced above.");
Affidavit of Michael Clement (Exhibit H to document no. 39)
("There is no resolution of the City Council ratifying the
Fraternal Order of Police Collective Bargaining Contract for the
period July 1, 1993 through June 30, 1995.").  Accordingly, the
first question presented is whether the collective bargaining
agreements upon which plaintiffs rely are, in fact, enforceable
against the City.


In 1981, the Providence City Council enacted section 17-27
of the Code of Ordinances, which provides:

> No collective bargaining agreement between the City of
> Providence and any labor organization shall become
> effective unless and until ratified by the Providence
> city council.

9

Providence Code of Ordinances, § 17-27(a). The Rhode Island Supreme Court has held section 17-27 to be valid and enforceable. Providence City Council v. Cianci, 650 A.2d 499, 501 (R.I. 1994). That court has also repeatedly concluded that collective bargaining agreements negotiated with labor unions are not finalized and enforceable against the City until formally ratified by the City Council. See id. ("The question presented to this court is whether the contract entered into between the city of Providence and local No. 1033 is valid and enforceable if not ratified by the city council pursuant to § 17-27 of the Providence Code of Ordinances. . . . [T]his court holds that the contract is invalid and unenforceable and that § 17-27 is valid."); Providence Teachers Union v. Providence School Board, 689 A.2d 384, 386 (R.I. 1996) ("[T]he [school] board cannot create an enforceable municipal collective bargaining agreement without council ratification."). See also Providence Teachers Union v. Providence School Board, 689 A.2d 388 (1997).

Surely plaintiffs' respective union leadership are (and were) well aware of the ratification requirement. In any event, Rhode Island law disposes of plaintiffs' claims under the collective bargaining agreements. Plaintiffs do not deny that the City Council failed to ratify the agreements at issue in this

10

case.[2]  And, absent such ratification, those agreements are neither complete nor enforceable against the City.  Consequently, plaintiffs' claims that they were denied contractual or other rights protected by either the United States Constitution or the Rhode Island Constitution when the City refused to honor provisions of those incomplete agreements must necessarily fail. Defendants' motions for summary judgment as to Counts 2, 3, 6, and 7 are, therefore granted.

## Conclusion

For the foregoing reasons, plaintiffs' motion for summary judgment (document no. 48) is denied.  Defendants' motion to dismiss on grounds of absolute legislative immunity (document no. 30) is also denied.[3]

Defendants' motions for summary judgment (documents no. 29 and 39) are granted in part and denied in part.  As to all of

---

[2]    Plaintiffs' arguments that the two collective bargaining agreements at issue in this case were "informally" ratified by the city council and/or ratified by operation of law are both undeveloped and unpersuasive.  Experienced union leaders know how to comply with ratification requirements in public sector bargaining.

[3]    Defendants' motion to dismiss appears to be identical to their motion for summary judgment (document no. 29) in all respects except one: it is captioned as a motion to dismiss, rather than one for summary judgment.

11

plaintiffs' claims arising out of rights allegedly conferred by the unratified and unenforceable collective bargaining agreements (Counts 2, 3, 6, and 7), defendants are granted summary judgment.

As to plaintiffs' remaining claims, the record is insufficiently developed to permit the court to rule on defendants' assertion that they are entitled to summary judgment. Among other things, it is entirely unclear whether the consent decree (under which plaintiffs claim to have acquired numerous vested and constitutionally protected rights) actually applies to them. Stated another way, it is uncertain whether plaintiffs are actually members of the class of retired public employees who are beneficiaries of that consent decree. At least one Rhode Island court has held that they are not. See Mansolillo, 1998 WL 799129 (R.I. Super. November 12, 1998). Accordingly, it would appear that plaintiffs lack standing to challenge any alleged violations of that consent decree or to assert the wrongful impairment of any rights arguably vested in the beneficiaries of that consent decree. And, they have provided no argument or references to supporting authority suggesting that, notwithstanding the court's opinion in Mansolillo, they are free to relitigate (in this forum) whether the consent decree applies to them.

12

In the absence of any meaningful discussion by the parties as to plaintiffs' standing to enforce the provisions of the consent decree, the court is unwilling to proceed to a substantive consideration of the complex constitutional issues on which the parties have chosen to engage. Consequently, defendants' motion for summary judgment as to plaintiffs' claims arising out of the consent decree are denied without prejudice.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

September 30, 1999

cc:  Amato A. DeLucca, Esq.
     Kevin F. McHugh, Esq.
     Clerk, USDC-RI